Davy Kelvin Pough
(Name)

P. O. Box 8101
(Address)

San Luis Obispo, CA 93409
(City, State, Zip)

(V72276)
(CDC Inmate No.)

2254    1983
FILING FEE PAID
Yes ___ No ✓
IFP MOTION FILED
Yes ✓ No
CONSENT TO
Court ___ Pro Se ✓

FILED

AUG 1 4 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# United States District Court
## Southern District of California

Davy Kelvin Pough _____ ,

                 Plaintiff,

v.

Cate, Mathew _____ ,
Grannis, N. _____ ,
Almager, V. M. _____ ,
Bradley, C. _____ ,
Ryan, S.J. _____ 
               Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

'08 CV 1498 JM RBB

Civil Case No. _____
(To be supplied by Court Clerk)

Complaint under the
Civil Rights Act
42 U.S.C. § 1983

## A. Jurisdiction

Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. If you wish to assert jurisdiction under different or additional authority, list them below.

_____

## B. Parties

1. Plaintiff:  This complaint alleges that the civil rights of Plaintiff,  Davy Pough
   (print Plaintiff's name)
   _____ , who presently resides at California Mens Colony
   (mailing address or place of confinement)
   P. O. 8101, San Luis Obispo, CA 93409 _____ , were violated by the actions
of the below named individuals. The actions were directed against Plaintiff at  Centinela
State Prison _____ on (dates) 3/19/07 , 4/23/07 , and 8/9/07 .
   (institution/place where violation occurred)        (Count 1)    (Count 2)    (Count 3)

§ 1983 SD Form
(Rev. 2/05)

2. <u>Defendants</u>: (Attach same information on additional pages if you are naming more than 4 defendants.)

Defendant _____Mathew Cate_____ resides in __Sacramento__ ,
             (name)                              (County of residence)
and is employed as a _____Director / Commissioner_____ . This defendant is sued in
                        (defendant's position/title (if any))
his/her ☐ individual ☒ official capacity. (Check one or both.) Explain how this defendant was acting
under color of law: __Director / Commissioner of the State Of California__
__He is legally responsible for the overall operation of the Depar-__
__ments at each institution under it's jurisdiction including CSP__ .

Defendant __Grannis, N.__ resides in __Sacramento__ ,
             (name)                           (County of residence)
and is employed as a __Cheif Inmate Appeal Cordinator__ This defendant is sued in
                        (defendant's position/title (if any))
his/her ☒ individual ☒ official capacity. (Check one or both.) Explain how this defendant was acting
under color of law: __Defendant Grannis violated Plaintiff's constitutional__
__rights of free speach to express self in the courts and the indefer-__
__rence to pitioner's needs to access the prison library during lockdowns__

Defendant __Almager, V. M.__ resides in __Imperial / San Diego__ ,
            (name)                           (County of residence)
and is employed as a __Warden Centinela State Prison__ . This defendant is sued in
                        (defendant's position/title (if any))
his/her ☒ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting
under color of law: __Almager is being sued in his official capacity for__
__allowing the acts of his staff to violate the Civil Rights of__
__the Plaintiff Davy Pough located at Centinela State Prison__ .

Defendant __Bradley, C.__ resides in __Imperial / San Diego__ ,
            (name)                           (County of residence)
and is employed as a __Vice Principal__ . This defendant is sued in
                        (defendant's position/title (if any))
his/her ☐ individual ☒ official capacity. (Check one or both.) Explain how this defendant was acting
under color of law: __Bradley, C. is being sued in his official capacity__
__as overseer for allowing the acts of his staff to violate the civil__
__rights of the plaintiff Davy Pough located at Centinela Prison__ .

Defendant   S.J. Ryan                     resides in   Imperial                    ,
                    (name)                                      (County of residence)

and is employed as a   Associate Warden-Central Sev This defendant is sued in
                          (defendant's position/title (if any))

his/her ☒ individual ☒ official capacity.  (Check one or both.)  Explain how this defendant was acting

under color of law:  Defendant is responsible for the day-to-day
operation of the facility, to include adjudication of 602 appeals
                   ( See Attached Statement of Facts )


Defendant _____ resides in _____ ,
                    (name)                                      (County of residence)

and is employed as a _____ . This defendant is sued in
                          (defendant's position/title (if any))

his/her ☐ individual ☐ official capacity.  (Check one or both.)  Explain how this defendant was acting

under color of law:


Defendant _____ resides in _____ ,
                    (name)                                      (County of residence)

and is employed as a _____ . This defendant is sued in
                          (defendant's position/title (if any))

his/her ☐ individual ☐ official capacity.  (Check one or both.)  Explain how this defendant was acting

under color of law:


Defendant _____ resides in _____ ,
                    (name)                                      (County of residence)

and is employed as a _____ . This defendant is sued in
                          (defendant's position/title (if any))

his/her ☐ individual ☐ official capacity.  (Check one or both.)  Explain how this defendant was acting

under color of law:

**C. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary.)

<u>Count 1</u>: The following civil right has been violated: <u>Denied Access to Courts</u>

(E.g., right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

<u>Supporting Facts</u>:   [Include all facts you consider important to Count 1. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 1.]

**(See Attached Statement Of Faces )**

§ 1983 SD Form
(Rev. 2/05)

<u>Count 2</u>:  The following civil right has been violated:  <u>Living conditions</u>

<u>Cruel and unusual punishment</u>
(E.g., right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

<u>Supporting Facts</u>:  [Include all facts you consider important to Count 2.  State what happened clearly and in your own words.  You need not cite legal authority or argument.  Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 2.]

**( See Attached Statements Of Facts)**

Count 3:  The following civil right has been violated: rights to medical care

(E.g., right to medical care, access to courts,

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts:  [Include all facts you consider important to Count 3.  State what happened clearly and in your own words.  You need not cite legal authority or argument.  Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 3.]

( See Attached Statement Of Facts )

**D. Previous Lawsuits and Administrative Relief**

  1.  Have you filed other lawsuits in state or federal courts dealing with the same or similar facts involved in this case?  □ Yes  ☒ No.

  If your answer is "Yes", describe each suit in the space below.  [If more than one, attach additional pages providing the same information as below.]

  (a)  Parties to the previous lawsuit:
  Plaintiffs: _____ N/a _____

  Defendants: _____ N/A _____

  (b)  Name of the court and docket number: _____

  _____.

  (c)  Disposition: [ For example, was the case dismissed, appealed, or still pending?] _____

  _____

  (d)  Issues raised: _____

  _____

  _____

  _____

  _____

  (e)  Approximate date case was filed: _____.

  (f)  Approximate date of disposition: _____.

  2.  Have you previously sought and exhausted all forms of informal or formal relief from the proper administrative officials regarding the acts alleged in Part C above? [E.g., CDC Inmate/Parolee Appeal Form 602, etc.] ?  ☒ Yes  □ No.

  If your answer is "Yes", briefly describe how relief was sought and the results.   If your answer is "No", briefly explain why administrative relief was not sought.

  _____

  _____

  _____

  _____

  _____

  _____

  _____

  _____

§ 1983 SD Form
(Rev. 2/05)

6

**E. Request for Relief**

Plaintiff requests that this Court grant the following relief:

      1. An injunction preventing defendant(s): __to prevent Defendants from__ __Aiding and Abetting staff, in suppression of speech, manipulating__ __due process of the appeal at informal, by not tracking or logging__ __informal level appeal, thus denying inmates being heard.__

      2. Damages in the sum of $ __400,000.__

      3. Punitive damages in the sum of $ __20,000,000.__

      4. Other: __Court cost, Filing and Attorney[s] fees__ __and fees to be added__

**F. Demand for Jury Trial**

Plaintiff demands a trial by ☒ Jury ☐ Court. (Choose one.)

**G. Consent to Magistrate Judge Jurisdiction**

In order to insure the just, speedy and inexpensive determination of Section 1983 Prisoner cases filed in this district, the Court has adopted a case assignment involving direct assignment of these cases to magistrate judges to conduct all proceedings including jury or bench trial and the entry of final judgment on consent of all the parties under 28 U.S.C. § 636(c), thus waiving the right to proceed before a district judge. The parties are free to withhold consent without adverse substantive consequences.

The Court encourages parties to utilize this efficient and expeditious program for case resolution due to the trial judge quality of the magistrate judges and to maximize access to the court system in a district where the criminal case loads severely limits the availability of the district judges for trial of civil cases. Consent to a magistrate judge will likely result in an earlier trial date. If you request that a district judge be designated to decide dispositive motions and try your case, a magistrate judge will nevertheless hear and decide all non-dispositive motions and will hear and issue a recommendation to the district judge as to all dispositive motions.

You may consent to have a magistrate judge conduct any and all further proceedings in this case, including trial, and the entry of final judgment by indicating your consent below.

Choose only one of the following:

☒ Plaintiff consents to magistrate judge jurisdiction as set forth above.

**OR**

☐ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

__August 09, 2008__
Date

Signature of Plaintiff

11. Defendant N. Grannis is and was at all times relevant the Cheif of Inmates Appeals for the California Department of Corrections and Rehabilitations. In that capacity, Defendant is ultimately responsible for the administrative and fiscal control and policy making of the Department of Corrections' Inmate Appeals Branch, in the adjudicationing of Director Level Appeals.

12. Defendant C. Bradley is and was at all times relevant the Vice Principal of Centinela State Penitentiary. Defendant C. Bradley is responsible for the day-to-day running and management of the institution law library and it's staff, along with Defendant S.J. Ryan and/or acting (AW) are responsible for the adjudication of First level inmates' 602 appeal inrelation specificity to Centinela' law library.

## Administrative Proceeding

13. Plaintiff timely filed 602 appeal contesting the conditions in which he had been deprived of access to the Facitity law library during lockdowns.

14. On or about August 09 2007, Plaintiff received form the Cheif of Inmates Appeal a notice of right to sue, entitling him to commence this action within one (1) year of his receipt of said notice, see exhibit (A), (B) and (C)

15. Plaintiff state that he has exhaust all administrative proceeding.

16. Defendants have acted and failed to act on grounds applicable to Plaintiff, making final injunctive and declaratiory releif appropriated.

**Factual Allegations**
Count I
(Denied Access to Courts)
(Denial of Due Process)

17. Plaintiff reallege and incorporate by reference para-
graphs 1 through 16 as if fully set out herein.

18. At all relevant times herein, defendants were "persons"
for purposes of 42 U.S.C. §1983 and acted under color of law to
deprive Plaintiff of his Constitutional rights, as set forth
more fully below.

19. Defendant Mathew Cate, as the Director of the Department
of Corrections and Rehabilitations for the State of California,
was aware of, and acquiesced in, the unconstitutional restrictions
and conditions of Plaintiff' confinement at the Centinela State
Penitentiary as set forth below, and failed to take necessary and
appropriate action. Defendant Mathew Cate thus subjected or caused
Plaintiff to be subjected to unconstitutional restrictions and
conditions, and demondstrated deliberte indifference.

20. Defendant V.M. Almega as Warden of the Centinela State
Penitentiary, was aware of, and acquiesced in, the unconstitutional
restritions and conditions of Plaintiff. Defendant V.M. Almega
was directly responsible for said unconstitutional restrictions
of confinement and demonstrated deliberate indifference.

21. Defendant S.J. Ryan and/or unknown actor as Associate
Warden-Central Services of the Centinela State Penitentiary,
was aware of, and acquiesced in, the unconstitutional restrictions
and conditions of Plaintiff. Defendant S.J. Ryan was directly
responsible for said ucostitutional restrictions and conditions
of Plaintiff to include adjudication of Plaintiff' 602 appeal at

First level for Central-Services of the Centinela State Peni-
tentiary. Defendant S.J..Ryan thus subjected or caused Plaintiff
to be subjected to unconstitutional restrictions of confinement
and demonstrated deliberate indifference.

22. Defendant C. Bradley as Vice Principle of the of the
Centinela State Penitentiary, was aware of, and acquiesced in,
the unconstitutional restrictions and conditions of Plaintiff.
Defendant C. Bradley was directly responible for said unconstitu-
tional restrictions of confinement of Plaintiff to include the
adjudication of Plaintiff' 602 inmate appeal at the First level,
specifically in relation to the Centinela Penitentiary legal library.
Defendant C. Bradley  thus subjected or caused Plaintiff to be
subjected to unconstitutional restrictions of confinement and
demonstrated indifference.

23. Defendant N. Grannis as Cheif of Inmate' Appeals of the
California Department of Corrections and Rehabilitations, was
aware of, and acquiesced in, the unconstitutional restrictions
and conditions of confinement and dem-on-strated deliberate
indifference.

24. Centinela State Penitentiary' appeal coodinators have
routinely failed to acknowledge Plaintiff 602 appeal' grieveances.

25. Plaintiff that was disciplinary free was restricted to
housing unit during race-related lockdown[s], months at a time,
and denied access to the law library, subsequently denied access
to the courts.

26. The Centinela State Penitentiary law facility does not provied access to law material during lockdown and/or modified lockdowns which inhibited Plaintiff from researching, consulting about, filing meaningful petitions, or litigating actionable claims in the courts.

27. The Centinela facility law library does not have a page-ing system, nor did it provides any "person" train in the law to assist Plaintiff in redress of, or in pending court proceeding, during the facility lockdown or modified lockdowns.

28. The totality of the circumstance of the above conditions and restrictions on Plaintiff' confinement have cause and continue to cause genuine deprivation of Plaintiff' First, Fourth and Fourteenth Amendment rights. As duly noted herein Plaintiff had suffered immense harm by the defendants actions collectively and in concert in the fact that the **(AEDPA)** Antiterrorism and Effective Death Penalty Act' time constrants **does-not** recognize Penitentiary lockdown or mondified programs as "unreasonable" for the purpose of a delay in filing a petition in the next higher court for which the tolling of time is interrupted if there is an "unreasonable" delay between denial of relief in a lower court and filing the petition in the next higher court. As such Plaintiff' claim irreparable harm. Plaintiff herein. Said restrictions and confind-ment are incompatible with contemprorary understanding of the United States Constitutional' Amendments, and standards of decency, cause wanton and unnessary infliction of pain and are not reasonably related to any legitimate penological objectives. Plaintiff was thereby subjective to cruel and unusual punishment in violation of the First, Fourth and Fourteenth Amendments to the United States Constitutio

## Count II
### (Living Conditions)

29. Plaintiff reallege and incorporate by reference paragraphs 1 through 28 as if fully set out herein.

30. At all relevant times herein, defendants were "persons" for purposes of 42 U.S.C. § 1983 and acted under color of law to deprive Plaintiff of his Constitutional rights, as set forth more fully below.

31. Defendant Mathew Cate, as Director of the Department of Corrections and Rehabilitations for the State of California, was aware of, and acquiesced in, the unconstitutional restritions and conditions of Plaintiff' confinement at the Centinela State Penitentiary as set forth below, and failed to take necessary and qppropriate action.  Defendant Mathew Cate thus subjected or cause Plaintiff to be subjected to unconstitutional conditions, and demonstrated deliberate indifference.

32. Defendant V.M. Almega, as Warden of the Centinela State Penitentiary, was aware of, and acquiesced in, the unconstitutional restrictions and conditions of Plaintiff' confinement at the Centinela State Penitentiary as set forth below.  Defendant -. V.M. Almega was directly responsible for operting, managing, and maintaining the Centinela State Penitentiary and is therefore directly resposible for said unconstitutional restrictions and conditions.  Defendant V.M. Almega thus subjected or cause Plaintiff to subjected to unconstitutional conditions and restrictions of confinement and dem-on-strated deliberate indifference.

33. Roaches, mice, insects, and other vermin have been in various areas of the Centinela State Penitentiary throughout Plaintiff' confinement at Centinela. Although the tiers of the institution are periodically sprayed with pesticides, individual cells are never sprayed. While a given tier was sprayed, roaches would scurry into individual cells until the pesticides fumes dissipated and would later return unharmend to roam freely throughout the entire facility.

34. Although the person who sprays the pesticides on the tires wears a mask and protective clothing, individaul cells are not evacuated, and inmates are supplied neither masks nor protective clothing. Ventilation at the institution is inadequate to prevent inmates from inhaling the pesticide fumes.

35. Plaintiff regularly find hair in food from the Centinela State Kitchen. Plaintiff have observed cockroaches where food trays are stacked prior to their distribution to inmates. Neither the kitchen workers nor the food servers wear hair nets. The kitchen facility itself is unclean and unsanitary. Food from previous meals are reguarly seen in the croners of the chow-halls.

36. During lockdowns' Plaintiff was deprived of regular two (2) hot meals per day. The two (2) meals were served cold under conditions that promted contamination, where the meals were served by California Department of Correction and Rehabilitations officers wearing baseball caps.(See exhibit "B").

37. The  totality of the circumstance of the above conditions and restrictions on Plaintiff' confinement constitute a failure to

provide the basic necessities of life, including adequate sanita-
tion, and have caused and continue to cause genuine deprivation
and hardship over an extended period of time Plaintiff. Said
restrictions and conditions are incompatible with contemporary
standards of decency, cause wanton and unnecessary infliction of
pain, and are not reasonably related to any legitimate penological
objectives. Plaintiff was thereby subjected to cruel and unusual
punishment in violation of the Fifth and Eighth Amendment to the
United States Constitution.

### Count III
(Inadequate Medical Care)

38. Plaintiff hereby incorporate each and every allegation
1 through 37 as if fully set out herein.

39. At all relevant times herein, Defendants were "persons"
for purpose of 42 U.S.C. § 1983 and acted under color of law to
deprive Plaintiff of his Constitutional rights, as set forth more
fully below.

40. Mathew Cate, as Director of the Department of Corrections
and Rehabilitations for the State of California, was aware of, and
acquiesced in, the unconstittutional restictions and condition s
of Plaintiff' confinemen t at Centinela State Penitentiary as set
forth below, and failed to take necessary and appropriate action.
Defendant Mathew Cate thus subjected or caused Plaintiff to be
subjected to unconstitutional conditional conditions and restrictions,
and demonstrated indifference.

41. Defendant V.M. Almega, as Warden of the Centinela State
Penitentiary, was aware of, and acquiesced in, the unconstitutional

restrictions and conditions of Plaintiff' confinement at the
Centinela State Penitentiary set forth below.  Defentdant V.M. Almega
was directly responsible for operating, managing, and maintaining
the Centinela State Peniteniary and is therefore directly responsible
for said unconstitutional restrictions and conditions. Defendant
V.M. Almega thus subjected or caused Plaintiff to be subjected to
unconstitutional conditions and restrictions of confinement, and
demonstrated deliberate indifference.

    42. Defendants have demonstrated deliberate indifference to
the  serious medical needs of Plaintiff.

    43. Medical attention and care at the institution is wholly
inadequate. The deficiencies are systemic. Medical records are not
used to assist diagnoses. Frequently, Plaintiff had to submit
grievances in order to receive medical attention from a hospital
or physician. Medical  accommodation  prescription prescribe by
a licensed physician, are not honored, due to underground memoran-
dum blocking accommodations, and in the blocking of physician issu-
ing prescriptions for vitamin to supplement the low nutritional
high calorie diet served at the institution.

    44. Plaintiff waited over two years for a teeth cleaning.

    45. Plaintiff suffered serious shoulder problem for over two
years before being diagnose with an operable condition.

    46. Plaintiff has suffered psychologically due (BPS)
Battered Prison Syndrom, results of constant and repeated maltreat,
and mistreatment at Centinela State Penitentiary, in keeping
with there mission statement.

47. The foregoing acts and omissions amount to deliberate indifference to the serious medical needs of Plaintiff. Plaintiff was thereby subjected to cruel and unusual punishment in violation of the Fifth and Eighth Amendments to the United States Constitution.

48. As a proximate result of Defendants' policies, practices, customs, procedures, acts, and omissions, Plaintiff have suffered and will continue to suffer immediate and irreparable injury and harm, including physical, psychological, and emotional injury. Plaintiff' physical and psychological health and well-being will continue to deteriorate during his confinement due to the conditions herein described. Plaintiff have no plain, adequate, or complete remedy at law to redress the wrongs herein described. Plaintiff will continue to be irreparably harmed and injured unless the Court grants the injunctive relief that plaintiff seek.

Exhibit "A"

1 of 1

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

**EXHIBIT**

Date:    AUG 0 9 2007

In re:    Pough, V-72276
Centinela State Prison
P.O. Box 731
Imperial, CA 92251-0731

"A"

IAB Case No.: 0614250        Local Log No.: CEN 07-0138

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner P. D. Vera, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that he is being denied access to the facility law library because of his race. Therefore, consequently he believes that he is being denied access to the courts. He requests access to the law library two days a week with liberty to check out two law library books for reviewing at his housing unit. He also requests three cases downloaded printed and stapled at the facilities cost pursuant to California Code of Regulations, Title 15, Section (CCR) 3122.

**II    SECOND LEVEL'S DECISION:** The reviewer found that the modified program in effect at the time of the appellant's appeal calls for legal library services for those inmates with approved court deadlines only. The appellant does not have a verified court deadline; therefore, he will not be afforded law library access until such time as the modified program dictates. The modified program changes from day to day and is designed to bring programming back to normal as soon as is possible. These are temporary restrictions only based upon security needs and are lifted when no longer needed. If the appellant receives a court deadline, he can have it verified and will then be afforded access during the lockdown period. Centinela State Prison (CEN)'s lockdown procedures are in accordance with state and departmental guidelines. It is noted that he was advised at the First Level of Review that his request to be able to take law books to his cell for review and/or download, print and staple cases at the facilities expense, is a procedure that is not available at this time. The appellant's appeal is denied at the Second Level of Review (SLR).

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.    FINDINGS:** Upon review of all documentation submitted, it appears that the appellant has received adequate law library access in accordance with regulation. The SLR appropriately informed the appellant that the institution does not currently have a paging system which would provide the appellant with case copies to do legal research in his housing unit. Documents reflect that the appellant had access to the law library on three occasions in the month of February 2007. The appellant does not have a verified court deadline and pursuant to CCR 3122 (a) "Inmates with established court deadlines shall be given higher priority to access law library resources than those with longer deadlines or without a deadline." The Federal Reporter 2nd Vol. 776 page 858 states: "The Constitution does not guarantee a prisoner unlimited access to a Law Library. Prison officials of necessity must regulate the time, manner, and place in which library facilities are used." The appellant has not demonstrated that the institution is denying him access to the law library based upon his race. As stated within the SLR, the institution was on modified program when the appellant filed this appeal. It should be noticed that different ethnic groups are impacted/restricted for safety reasons as a result of the actions of a few. The appellant has failed to present any new evidence or compelling argument to warrant a modification of the decision reached by the SLR.

**B.    BASIS FOR THE DECISION:**
CCR: 3001, 3120, 3122, 3160, 3380
CDC Operations Manual Section: 53060.10

Exhibit B

1 of 2

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date:  AUG 2 9 2007

In re:   Pough, V-72276
Centinela State Prison
P.O. Box 731
Imperial, CA  92251-0731

**EXHIBIT**

11-B"

IAB Case No.: 0615845          Local Log No.: CEN 07-00357

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner P. D. Vera, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:**  It is the appellant's position that during lockdowns inmate's are being deprived of regular two hot meals per day. The two meals are served cold, under conditions that promote contamination. He also claims that meals are being served by CDCR representatives wearing baseball caps. He requests for the institution to incorporate the use of portable heat source that maintains meals above ambient temperature. He also requests for the initiation of the logging of date, time and temperature of meals served. He further requests for staff to comply with the use of hair nets pursuant to the health and safety standards.

**II   SECOND LEVEL'S DECISION:**  The reviewer found that the appellant was informed at the First Level of Review by R. Navarro Supervising Correctional Cook, that the Centinela State Prison (CEN) Food Services had submitted a proposal to the warden, recommending a new procedure for cell feeding. This procedure specifically addresses the two hot meal issues. He was also informed that that the warden had met with all pertinent food services staff and had established a committee to review the current procedures being utilized. The committee had in fact recently conducted an on-site tour of Calipatria State Prison at which time they had the opportunity to observe their procedures. Mr. C. Callahan, Business Services Manager, was contacted and he informed Ms. Loera, AGPA, Inmate Appeals Office, that the new Operational Procedure (OP) had been drafted and submitted on May 17, 2007, to the Warden for his review and/or approval. If approved, the new OP would be implemented and the necessary equipment would be purchased. The appellant's appeal is granted in part at the Second Level of Review (SLR).

**III  DIRECTOR'S LEVEL DECISION:**  Appeal is denied.

   **A.  FINDINGS:**  The examiner contacted the CEN Food Services Manager in order to obtain further clarifying information in regards to the appellant's appeal issues. The examiner was informed that the new Cell Feeding OP was approved by the Warden and has been implemented. The food is being carted to the housing units in bulk and dished onto the food trays and served to the inmates. The Food Services Manager also informed the examiner that designated Supervising Correctional Cooks are randomly taking the temperatures of the food within the housing units to ensure the food temperature is maintained. The issue of custody staff utilizing their baseball caps to cover their hair is moot as the use of their baseball caps is sufficient and is in accordance with health and safety standards. It appears that the institution has made a good faith effort to resolve the appeal issues brought forth by the appellant. Based upon the aforementioned information, the appellant has failed to present any new evidence or compelling argument to warrant a modification of the decision reached by the SLR.

   The appellant has added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Appeal Form, Sections A and B).

   **B.  BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3001, 3050, 3052, 3380
CDC Operations Manual Section: 54080.1, 54080.3

Exhibit "B"

2 of 2

POUGH, V-72276
CASE NO. 0615845
PAGE 2

    **C. ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CEN
        Appeals Coordinator, CEN

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

Exhibit "C"
1 of 3

Date:     June 12, 2007

**EXHIBIT**

To:       POUGH, V-72276
          Centinela State Prison

"C"

Subject: SECOND LEVEL APPEAL RESPONSE
                      LOG NO.:     CEN-C-07-00479

<u>APPEAL DECISION</u>:          DENIED

<u>APPEAL ISSUE</u>:       LIVING CONDITIONS

Appellant contends that he is being denied out of cell exercise time since February 21, 2007.

Appellant requests on appeal to have access to exercise yard for not less than seven hours per week.

<u>INTERVIEWED BY</u>:  T. Willis, Correctional Sergeant, at the First Level of Review

<u>REGULATIONS</u>:  The rules governing this issue are:

> **California Penal Code Section (PC) 2086.    Temporary rules and regulations**
> <u>The wardens may make temporary rules and regulations, in case of emergency, to remain in force until the department otherwise provides.</u>

> **California Code of Regulations, Title 15, Section (CCR) 3001. Subject to Regulations.**
> <u>Regardless of commitment circumstances, every person confined or residing in facilities of the department is subject to the rules and regulations of the director, and to the procedures established by the warden</u>, superintendent, or parole region administrator <u>responsible for the operation of that facility.</u> Persons on parole or civil addict outpatient status are subject to such director's rules, regulations and parole region procedures as may be applicable to such persons.

> **CCR 3220.    Athletic and Recreational and Physical Education Program Participation.**
> (a)      <u>Interested inmates shall be provided an equal opportunity to participate in constructive recreational and physical education programs under safe and secure conditions,</u> consistent with the inmate's custodial classification, work/training assignment, privilege group and security requirements.

(b)    The recreation program may operate seven days a week with specific program, gymnasium and/or yard schedules established by the institution head. Notices of tournaments and special events shall be posted in locations accessible to all inmates.

## CCR 3270. General Policy.

The primary objectives of the correctional institutions are to protect the public by safely keeping person committed to the custody of the Director of Corrections, and to afford such persons with every reasonable opportunity and encouragement to participate in rehabilitative activities. Consistent effort will be made to insure the security of the institution and the effectiveness of the treatment programs within the framework of security and safety. Each employee must be trained to understand how physical facilities, degree of custody classification, personnel, and operative procedure affect the maintenance of inmate custody and security. The requirement of custodial security and of staff, inmate and public safety must take precedence over all other considerations in the operation of all the programs and activities of the institutions of the department.

Appellant contends that he is being denied access to "out of cell" exercise periods, especially when the yard is available. He alleges that he has been confined to his cell for twenty-four hours a day, seven days a week for nine consecutive days now, even though he is disciplinary free. He states that this has been going on since February 21, 2007, to the current date.

At the Informal Level of Review, appellant was informed by T. Manning, Correctional Sergeant, that due to the continued modified program on Facility "C," and his ethnicity, recreational activities are currently unavailable to him.

Appellant argues that the First Level decision "promotes and rewards inmates" in disciplinary lock-up with rights which exceed that of "disciplinary-free" inmates.

At the First Level of Review, appellant was advised that the facility was currently on modified program due to a race riot on February 21, 2007, between Hispanic and Black inmates. This resulted in all Black and Hispanic inmates restricted in their activities due to the implemented modified program for the safety and security of the institution.

A call was placed to the housing unit, whereupon custody staff confirmed that they have been on modified program since approximately the middle of February 2007.

### Operational Procedure, (4) 001, Daily Operational Procedure, Level IV, General Population (page 8)

F.    Suspension of Participation in Scheduled Program Activities
    1.    All scheduled timelines, activities and programs are subject to the demands of the security of the institution and the safety of persons.
    2.    Inmate participation in these activities is a privilege and can be terminated if an inmate fails to follow the rules and regulations as published in the Inmate Orientation

POUGH, V-72276
Appeal Log No. CEN-C-07-00479
Page 3

Exhibit "C"
3 of 3

Handbook or other institutional and departmental policies and guidelines.

3.  A Modified Program/Lockdown exists when the Warden temporarily suspends any or all non-essential facility operations, procedures, services and/or functions in order to prevent, contain, or control a widespread facility or group disturbance.

**Departmental Operations Manual (DOM) Section 52020.9.8. Lockdown Movement**

All movement of inmates during a lockdown shall be coordinated by the Watch Commander. Movement shall be restricted to those inmates cleared to perform essential or emergency services. Inmate movement shall be under direct staff supervision and/or escort.

DECISION: The appeal is denied.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

V. M. ALMAGER
Warden (A)
Centinela State Prison

## COMPLAINT

Come now Plaintiff, Davy K. Pough and for his cause of action upon his information and belief alleged and stated herein as follows:

1. This is a action brought by Plaintiff on behalf of his cause while confine in the Centinela State Penitemtiary. Plantiff seek declaratory, injunctive and punitive relief for deprivation under color of state law of the rights, privileges, and immunities secured to him by the Constitution of the United States and in particular the First, Fourth, Fifth, Eighth and Fourteenth Amendments thereto.

2. This action is filed pursuant to 42 U.S. §§ 1983, seeking redress of injuries suffered by Plaintiff for deprivation under color of state law of rights secured by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Accordingly, jurisdiction is proper in this Court pursuant to U.S.C. §§ 1331 and 1343 (a)(3).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Defendants V.M. Almega, C. Bradley, and S.J. Rayn and/or acting (AW) resides in the district. Defendants Mathew Cate and N. Grannis have authority over the district and each of the asserted claims for relief arose there.

4. Plaintiff specifically seek relief from the conditions at Centinela State Penitentiary that fall below the standards of human decency, inflict needless suffering on Plaintiff and inmates confined there, and deprived him of legal, educational, physical and recreational opportunities.

5. Centinela State Penitentiary is a multiple-level security institution, which as of March 2008, houses approximately 5200 inmates far exceeding the maximum safe operational capacity.

6. Plaintiff was confined at Centinela State Penitentiary between July 6, 2005 through March 28, 2008 and is subject to return there.

7. Plaintiff is currently and inmate at California Mens Colony (C.M.C.) but was recently confined at Centinela State Penitentiary.

8. Defendant Mathew Cate is and was at all times relevant the Director of California State Department of Corrections and Reha-bilitation. In that capacity, Defendant Mathew Cate is Ultimately responsible for the administrative and fiscal control and policy making of the Department of Corrections, including at the Centinela State Penitentiary.

9. Defendant V.M. Almega is and was at all times relevant the Warden of the Centinela State Penitentiary. Defendant V.M. Almega is responsible for the day-to-day management of the instution and, along with Defendant Mathew Cate takes part in establishing and enforcing the policies and rules of the instution.

10. Defendant S.J. Ryan and/or acting (AW) is and was at all times relevant the Associate Warden-Central Services of the Centinela State Penitentiary. Defendant S.J. Ryan is responsible for the day-to-day management of the institution and, along with Defendants Mathew Cate, V.M. Almega takes part in establishing and enforcing the policies and rules of the institution, and in the adjudications of First and Second level inmate' administrative appeals proceedings.

## Prayer For Relief

WHEREFORE, Plaintiff pray as follows:

1. That this Honorable Court issue a judgment declaring that Defendants' policies, practices, acts, and omissions as described herein violate Plaintiff' rights as guaranteed by the First, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States;

2. That this Honorable Court permanently enjoin Defendants, their officers, agents, employees, and successors in office, along with those acting in concert with them, from engaging in the unlawful practices described herein and further shape injunctive relief to provide Plaintiff / inmates with the legal, sanitary, and healthcare, opportunities sought herein;

3. That this Honorable Court grant Plaintiff the right to a Trial by Jury and requested and / or needed, the right to Counsel. The Plaintiff also request that he be allowed the right to evidentry hearing, when deemed appropriate by the Courts.

4. That this Honorable Court grant Plaintiff punitive damages as the Court see fit, plus attorney[s] and filing cost.

5. That this Honorable Court excuse any unprofessional filing(s), spelling and punctuation, and legal pleading, being that Plaintiff not astute in the law, nor totally compentent to professionally represent self, and intrest.

6. The Plaintiff thanks the Honorable Court its consideration.

Executed this day August 09 : 2008

---------------------------------------
Davy Kelvin Pough, in pro-se

STATE OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO

I am the party of the above entitled actions, a citizen of the United States and over the age of eighteen years, and a resident of San Luis Obispo County.  My current address is:

Davy K. Pough (V72276)

California Men's Colony-East
P.O. Box 8101 Room 5394X
San Luis Obispo, CA. 93409-8101

I CERTIFY ( OR DECLARE), UNDER PENALTY OF PERJURY, THAT THE FOREGOING IS TRUE AND CORRECT.
EXECUTED ON August 09, , 20 08 , AT SAN LUIS OBISPO, CALIFORNIA, 93409-8101.

PETITIONER

..............................................................................................................................

**PROOF OF SERVICE BY MAIL**

STATE OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO

I AM A RESIDENT OF SAID COUNTY, I AM OVER THE AGE OF EIGHTEEN YEARS AND NOT A PARTY TO THE ABOVE ENTITLED ACTION.  MY BUSINESS ADDRESS IS:

Theodis King (C37947)

CALIFORNIA MEN'S COLONY-EAST
P.O. BOX 8101 / Room 5394
SAN LUIS OBISPO, CALIFORNIA 93409-8101

ON August 09, , 20 08 , I SERVED THE WITHIN
1983 Petition on the United States District
Court Southern of California

ON THE PARTY: Clerk of U.S. District Court

IN SAID ACTION, BY PLACING A TRUE COPY THEREOF IN A SEALED ENVELOPE WITH POSTAGE THEREON PREPAID, IN THE UNITED STATES MAIL, AT CALIFORNIA MEN'S COLONY, SAN LUIS OBISPO, CALIFORNIA, 93409-8101, ADDRESSED AS FOLLOWS:

U. S. District Court, Room 4290
880 Frcount Street, San Diego, CA 92101-8900

I DECLARE, UNDER PENALTY OF PERJURY, THAT THE FOREGOING IS TRUE AND CORRECT.
EXECUTED ON August 09, 2008 , 20 , AT SAN LUIS OBISPO COUNTY, CALIFORNIA.

SIGNATURE OF DECLARANT

(REV. 6/07)

JS44
(Rev. 07/89)

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

**Davy Kelvin Pough**

FILING FEE PAID
Yes☐ No☑
IFP MOTION FILED
No
COPIES RECEIVED
Court ☐ Judges ☐

**FILED**
AUG 14 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

DEFENDANTS

Cate, et al

**(b) COUNTY OF RESIDENCE OF FIRST LISTED** San Luis Obispo
**PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Davy Kelvin Pough
PO Box 8101
San Luis Obispo, CA 93409
V-72276

ATTORNEYS (IF KNOWN)

**'08 CV 1498 JM RBB**

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff      ☒ 3 Federal Question
                                    (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant     ☐ 4 Diversity (Indicate Citizenship of Parties in
                                    Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

## 42 U.S.C. 1983

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☒ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appelate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23    DEMAND $    Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE _____    Docket Number _____

DATE   8/14/2008

SIGNATURE OF ATTORNEY OF RECORD
_R. Mully_