1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10   DAVY KELVIN POUGH,              )  Civil No. 08CV1498-JM (RBB)
                                     )
11              Plaintiff,           )  **REPORT AND RECOMMENDATION**
                                     )  **GRANTING IN PART AND DENYING**
12   v.                              )  **IN PART DEFENDANTS' MOTION TO**
                                     )  **DISMISS AND FOR SEVERANCE OF**
13   N. GRANNIS, et al.,             )  **PARTIES AND CLAIMS [DOC. NO.**
                                     )  **27]**
14              Defendants.          )
     _____)

15

16        Plaintiff Davy Kelvin Pough, a state prisoner proceeding pro

17   se and in forma pauperis, filed a Complaint on August 14, 2008,

18   pursuant to 42 U.S.C. § 1983 [doc. no. 1].  Plaintiff filed a First

19   Amended Complaint nunc pro tunc to December 11, 2008 [doc. no. 6],

20   a Second Amended Complaint on February 2, 2009 [doc. no. 9], and a

21   Third Amended Complaint on April 8, 2009 [doc. no. 14].[1]  A summons

22   was returned unexecuted for Defendant C. Callahan on April 14, 2009

23   [doc. no. 17].  The remaining six Defendants, Ryan, Almager,

24   Arellano, Bradley, Grannis, and Navarro, waived service of the

25   summons and Plaintiff's Third Amended Complaint [doc. nos. 18-23].

26

27   _____

28        [1] Because Pough's Third Amended Complaint is not consecutively
     paginated, the Court will use the page numbers assigned by the
     electronic case filing system.

1   On May 22, 2009, the six appearing Defendants filed a Motion
2   to Dismiss and for Severance of Parties and Claims with a
3   Memorandum of Points and Authorities in Support of the Motion, a
4   Request for Judicial Notice, declarations from N. Grannis and D.
5   DeGeus, and a <u>Wyatt</u> Notice [doc. no. 27].
6   On June 24, 2009, the Court issued a <u>Klingele/Rand</u> Notice
7   advising Pough of Defendants' pending Motion to Dismiss for failure
8   to exhaust and allowing him time to present any additional evidence
9   demonstrating exhaustion [doc. no. 29]. Plaintiff's Opposition to
10  Defendants' Motion to Dismiss was filed nunc pro tunc to July 27,
11  2009, with an exhibit and a declaration from Plaintiff objecting to
12  the <u>Wyatt</u> Notice [doc. no. 32]. Pough also filed a Request for
13  Judicial Notice [doc. no. 35]. Although he mistakenly refers to
14  Defendants moving for "summary judgment," Plaintiff's Opposition
15  clearly addresses the merits of Defendants' Motion to Dismiss.
16  (Opp'n 3, 5-17.) Defendants filed a Reply on August 13, 2009 [doc.
17  no. 37]. The Court found Defendants' Motion suitable for decision
18  without oral argument pursuant to Civil Local Rule 7.1(d)(1) [doc.
19  no. 30].
20  The Court has reviewed the Third Amended Complaint and
21  attachments, Defendants' Motion to Dismiss and attachments,
22  Plaintiff's Opposition and attachments, the Requests for Judicial
23  Notice and exhibits, and Defendants' Reply.
24  For the reasons set forth below, the district court should
25  **GRANT** in part and **DENY** in part Defendants' Motion to Dismiss and
26  for Severance of Parties and Claims.
27
28

2

# I. FACTUAL BACKGROUND

Plaintiff is currently a prisoner at the California Men's Colony ("CMC") in San Luis Obispo, California; however, the allegations in his Third Amended Complaint arise from events that occurred while he was incarcerated at Centinela State Prison ("Centinela") in Imperial County, California, between July 6, 2005, and March 28, 2008.  (Third. Am. Compl. 10.)

In count one, Pough argues that Defendants enforced prison policies that denied him adequate time in Centinela's law library during extended prison lockdowns.  (Id. at 12.)  Plaintiff contends that Warden Almager's "uncodified policy regulated Plaintiff['s] total time of physical access in the law library to less than sixty (60) hours over the period of a year."  (Id.)  Specifically, he claims Defendants Almager, Ryan, Bradley, and Grannis failed in their duty to provide Plaintiff with constitutionally adequate access to the courts.  (Id. at 20-21.)  As a result, Pough explains he was time barred from pursuing his Petition for Writ of Habeas Corpus in district court.  (Id. at 20.)

Plaintiff also argues he was denied equal protection of the laws when Defendants discriminated against him based on his membership in a protected class.  (Id. at 25.)  Pough claims that Defendants passed over him in favor of other prisoners for education and work opportunities during the course of three years. (Id.)  He witnessed inmates who had not been at the prison as long as he receive school and job assignments that he did not.  (Id.) This is significant, he argues, because an inmate's classification goes from A2B to A1A upon receipt of such assignments.  (Id.) Inmates who earn A1A status are not confined in their cells on

weekends, evenings, and holidays.  (<u>Id.</u>)  Also, Plaintiff states that A1A prisoners are allowed to make telephone calls every other day, whereas he is only allowed to make one telephone call per month.  (<u>Id.</u>)

Count two advances numerous allegations regarding inadequate living conditions at Centinela.  (<u>Id.</u> at 26-27, 29-31.)  Plaintiff claims that instead of receiving two hot meals per day during lockdowns, his meals were cold; he also contends the cool temperature "prom[p]ted contamination."  (<u>Id.</u> at 26.)  He alleges the kitchen facility is unsanitary because he believes kitchen workers do not wear hairnets; he found hair in his food; and he saw cockroaches near food trays.  (<u>Id.</u> at 27.)  Plaintiff asserts prisoners are not given adequate disinfectant to prevent the spread of disease during lockdowns.  (<u>Id.</u>)  Pough also claims he has observed roaches, mice, insects, and other vermin inside the prison.  (<u>Id.</u>)  He contends that when prison officials spray pesticides, prisoners are not given adequate protection against inhaling the fumes.  (<u>Id.</u>)

Additionally, Pough asserts that although he is discipline free, he was denied out-of-cell exercise and confined to his cell for more than 100 consecutive days, causing him headaches, atrophy, and painful muscle cramps.  (<u>Id.</u> at 28.)  He claims he was also denied satisfactory indoor movement and exercise as a result of his confinement.  (<u>Id.</u>)

In count three, Plaintiff alleges he has received inadequate medical care.  (<u>Id.</u> at 32-33.)  He argues that the medical care at Centinela is "wholly inadequate," and "the deficiencies are systematic."  (<u>Id.</u> at 32.)  Pough believes physicians do not use

medical records when diagnosing prisoners. (<u>Id.</u>) He claims he had
to submit grievances several times to receive medical attention.
(<u>Id.</u>) Further, Plaintiff contends that he experienced throbbing
and numbness in his neck and fingers and loss of muscle tissue in
his shoulder for more than two years before he was diagnosed with
arthritis. (<u>Id.</u>) He was subsequently prescribed aspirin and given
medical accommodations, including a lower bunk, a pillow, and a
thicker mattress. (<u>Id.</u>) Pough also asserts that his request to
receive physical therapy to strengthen muscle groups was never
answered. (<u>Id.</u> at 33 (citing <u>id.</u> Attach. #1 Ex. HH at 1.))

An orthopedic surgeon diagnosed Plaintiff with degenerative
cartilage in his shoulder following his July 2, 2007, transfer to
CMC. (<u>Id.</u> at 34.) Plaintiff contends the inadequate medical care
at Centinela caused the degenerated cartilage. (<u>Id.</u>) He also
claims that insufficient care caused abnormalities in his cervical
spine and the abnormal nerve conduction of his right ulnar nerve.
(<u>Id.</u> at 35.) Pough argues that although he requested physical
therapy for his shoulder, the request was never answered. (<u>Id.</u> at
33.)

Plaintiff also contends he received inadequate dental care at
Centinela. (<u>Id.</u> at 36-37.) He alleges that he waited more than
two years to receive a teeth cleaning. (<u>Id.</u> at 36.) Also, Pough
claims he filed a request for emergency dental treatment after a
damaged crown exposed a sensitive tooth. (<u>Id.</u>) Officials advised
him to have the tooth extracted because replacement of the cap was
not part of prison dental services. (<u>Id.</u> at 37.) He was
subsequently moved to another yard and a doctor cemented the crown
to Plaintiff's tooth without cleaning or preparing the crown or

tooth first.  (Id.)  Lastly, Pough claims that he has suffered from Battered Prison Syndrom, a psychological problem, as a result of mistreatment by prison officials.  (Id.)

**A.   Judicial Notice**

Defendants request that the Court take judicial notice of Magistrate Judge Leo S. Papas's Report and Recommendation issued on March 23, 2009, in Pough v. Marshall, et al., Case No. 08-cv-1776 BTM (POR) (S.D. Cal. Mar. 23, 2009).  (Defs.' Mot. Dismiss & Sever Attach. #2 Req. Judicial Notice Ex. A.)  Likewise, Pough requests that the Court take judicial notice of his Objections to the Report and Recommendation.  (Pl.s' Req. Judicial Notice Attach. #1 Ex. A.)

When ruling on motions to dismiss, courts may consider facts stated in the complaint, documents attached to the complaint, and matters of which they take judicial notice.  Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017-18 (5th Cir. 1996) (citing Fed. R. Evid. 201(f)).  Courts may take judicial notice of any fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  "A court shall take judicial notice if requested by a party and supplied with the necessary information."  Fed. R. Evid. 201(d).  Judicial notice may be taken of "records of state agencies and other undisputed matters of public record."  Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n.1 (9th Cir. 2004) (citing Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)).

1    The Report and Recommendation and Pough's Objections are both

2  part of the court record and their authenticity is not in dispute.

3  The Court notes that Pough's habeas corpus petition is on appeal.

4  Accordingly, the Court takes judicial notice of the Report and

5  Recommendation, Objections, and Pough's habeas corpus case, <u>Pough</u>

6  <u>v. Marshall, et al.</u>, Case No. 08-cv-1776 BTM (POR) (S.D. Cal. filed

7  Sept. 26, 2008).

8    **II.   LEGAL STANDARDS APPLICABLE TO DEFENDANTS' MOTION TO DISMISS**

9              **FOR FAILURE TO STATE A CLAIM**

10  **A.    Rule 12(b)(6) Motions to Dismiss**

11    A motion to dismiss for failure to state a claim pursuant to

12  Federal Rule of Civil Procedure 12(b)(6) tests the legal

13  sufficiency of the claims in the complaint.  <u>See</u> <u>Davis v. Monroe</u>

14  <u>County Bd. of Educ.</u>, 526 U.S. 629, 633 (1999).  "The old formula --

15  that the complaint must not be dismissed unless it is beyond doubt

16  without merit -- was discarded by the <u>Bell Atlantic</u> decision [<u>Bell</u>

17  <u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 563 n.8 (2007)]." <u>Limestone</u>

18  <u>Dev. Corp. v. Vill. of Lemont</u>, 520 F.3d 797, 803 (7th Cir. 2008).

19    A complaint must be dismissed if it does not contain "enough

20  facts to state a claim to relief that is plausible on its face."

21  <u>Bell Atl. Corp.</u>, 550 U.S. at 570.  "A claim has facial plausibility

22  when the plaintiff pleads factual content that allows the court to

23  draw the reasonable inference that the defendant is liable for the

24  misconduct alleged." <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct.

25  1937, 1949 (2009).  The court must accept as true all material

26  allegations in the complaint, as well as reasonable inferences to

27  be drawn from them, and must construe the complaint in the light

28  most favorable to the plaintiff.  <u>Cholla Ready Mix, Inc. v. Civish</u>,

382 F.3d 969, 973 (9th Cir. 2004) (citing <u>Karam v. City of Burbank</u>, 352 F.3d 1188, 1192 (9th Cir. 2003)); <u>Parks Sch. of Bus., Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995); <u>N.L. Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).

The court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>see</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 563 n.8.  A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001) (citing <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988)).

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." <u>Holden v. Hagopian</u>, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); <u>see</u> <u>Halkin v. VeriFone, Inc.</u>, 11 F.3d 865, 868 (9th Cir. 1993); <u>see also</u> <u>Cholla Ready Mix</u>, 382 F.3d at 973 (citing <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged[]").  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, when resolving a motion to dismiss for failure to state a claim, courts may not generally consider materials outside the pleadings.  <u>Schneider v. Cal. Dep't of Corrs.</u>, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); <u>Jacobellis v. State Farm Fire & Cas. Co.</u>, 120 F.3d 171, 172 (9th Cir. 1997); <u>Allarcom Pay Television Ltd. v. Gen. Instrument Corp.</u>, 69 F.3d 381, 385 (9th Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  <u>Schneider</u>, 151 F.3d at 1197 n.1.  This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6).  <u>Id.</u> (citing <u>Harrell v. United States</u>, 13 F.3d 232, 236 (7th Cir. 1993).

"When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ."  <u>Parks Sch. of Bus.</u>, 51 F.3d at 1484 (citing <u>Cooper v. Bell</u>, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)).  The court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading . . . ."  <u>Branch v. Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994), <u>overruled on other grounds by</u> <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119 (9th Cir. 2002); <u>Stone v. Writer's Guild of Am. W., Inc.</u>, 101 F.3d 1312, 1313-14 (9th Cir. 1996).

These Rule 12 (b)(6) guidelines apply to Defendants' Motion to Dismiss.

**B.**   <u>**Standards Applicable to Pro Se Litigants**</u>

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  <u>Karim-Panahi v. Los</u>

1   *Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The rule

2   of liberal construction is "particularly important in civil rights

3   cases."  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

4   In giving liberal interpretation to a pro se civil rights

5   complaint, courts may not "supply essential elements of claims that

6   were not initially pled."  *Ivey v. Bd. of Regents of the Univ. of

7   Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory

8   allegations of official participation in civil rights violations

9   are not sufficient to withstand a motion to dismiss."  *Id.*; *see

10  also* *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir.

11  1984) (finding conclusory allegations unsupported by facts

12  insufficient to state a claim under § 1983).  "The plaintiff must

13  allege with at least some degree of particularity overt acts which

14  defendants engaged in that support the plaintiff's claim."  *Jones*,

15  733 F.2d at 649 (internal quotation omitted).

16      Nevertheless, the court must give a pro se litigant leave to

17  amend his complaint "unless it determines that the pleading could

18  not possibly be cured by the allegation of other facts."  *Lopez v.

19  Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation

20  omitted) (citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir.

21  1987)).  Thus, before a pro se civil rights complaint may be

22  dismissed, the court must provide the plaintiff with a statement of

23  the complaint's deficiencies.  *Karim-Panahi*, 839 F.2d at 623-24.

24  But where amendment of a pro se litigant's complaint would be

25  futile, denial of leave to amend is appropriate.  *See* *James v.

26  Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

27

28

08cv1498 JM (RBB)

**C.    Stating a Claim Under 42 U.S.C. § 1983**

To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States.   42 U.S.C.A. § 1983 (West 2003); <u>Shah v. County of Los Angeles</u>, 797 F.2d 743, 746 (9th Cir. 1986).

### III. DEFENDANTS' MOTION TO DISMISS

Defendants Almager, Arellano, Bradley, Ryan, Navarro, and Grannis move to dismiss Pough's Third Amended Complaint.  (Defs.' Mot. Dismiss & Sever Attach. #1 Mem. P. & A. 2.)  Defendants assert Plaintiff failed to exhaust his administrative remedies for many of his claims.  (<u>Id.</u> at 16-19.)  In addition, they argue that each of Pough's six causes of action should be dismissed for failure to state a cognizable claim for relief.  (<u>Id.</u> at 4.)  Defendants allege the Third Amended Complaint fails to comply with Federal Rule of Civil Procedure 8.  (<u>Id.</u> at 3-4); <u>see also</u> Fed. R. Civ. P. 8.  They also contend that each Defendant is entitled to qualified and Eleventh Amendment immunities for all actions taken in their official capacities.  (Defs.' Mot. Dismiss & Sever Attach. #1 Mem. P. & A. 5, 22-23.)

Defendants also move under Federal Rule of Civil Procedure 18 to sever from this lawsuit all unrelated, exhausted claims, other than the access to court claim, for which the Court grants leave to amend.  (<u>Id.</u> at 19-20); <u>see also</u> Fed. R. Civ. P. 18.  Finally, Defendants move under Federal Rule of Civil Procedure 20 to sever from this lawsuit all Defendants not properly named in connection

11

1  with the access to courts claim.  (Defs.' Mot. Dismiss & Sever

2  Attach. #1 Mem. P. & A. 20-21); see also Fed. R. Civ. P. 20.

3  **A.    Exhaustion**

4      **1.    Motion to Dismiss Unexhausted Claims Pursuant to the**

5          **Unenumerated Portions of Rule 12(b)**

6      Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act

7  ("PLRA") states:  "No action shall be brought with respect to

8  prison conditions under section 1983 of this title, or any other

9  Federal law, by a prisoner confined in any jail, prison, or other

10 correctional facility until such administrative remedies as are

11 available are exhausted."  42 U.S.C.A. § 1997e(a) (West 2003).  The

12 exhaustion requirement applies regardless of the relief sought.

13 Booth v. Churner, 532 U.S. 731, 741 (2001) (citation omitted).

14     "'[A]n action is "brought" for purposes of § 1997e(a) when the

15 complaint is tendered to the district clerk[]' . . . ." Vaden v.

16 Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006) (quoting Ford v.

17 Johnson, 362 F.3d 395, 400 (7th Cir. 2004)).  Therefore, prisoners

18 must "exhaust administrative remedies before submitting any papers

19 to the federal courts."  Id. at 1048 (emphasis added).

20     Section 1997e(a)'s exhaustion requirement creates an

21 affirmative defense.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th

22 Cir. 2003).  "[D]efendants have the burden of raising and proving

23 the absence of exhaustion."  Id. (footnote omitted).  Defendants in

24 § 1983 actions properly raise the affirmative defense of failure to

25 exhaust administrative remedies through an unenumerated motion to

26 dismiss under Rule 12(b).  Id. (citations omitted).

27     Unlike motions to dismiss for failure to state a claim for

28 which relief may be granted, "[i]n deciding a motion to dismiss for

12

failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988)) (footnote omitted).  Courts have discretion regarding the method they use to resolve such factual disputes.  Ritza, 837 F.2d at 369 (citations omitted).  "A court ruling on a motion to dismiss also may take judicial notice of 'matters of public record.'"  Hazleton v. Alameida, 358 F. Supp. 2d 926, 928 (C.D. Cal. 2005) (citing Lee v. City of Los Angeles, 250 F.3d at 688 (citations omitted)).  But "if the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust[,] . . . the court must assure that [the plaintiff] has fair notice of his opportunity to develop a record."  Wyatt, 315 F.3d at 1120 n.14.

"[When] the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."  Id. at 1120 (citing Ritza, 837 F.2d at 368 n.3).

### 2.  The Administrative Grievance Process

"The California Department of Corrections [CDC] provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment:  an informal level, a first formal level, a second formal level, and the Director's level."  Vaden, 449 F.3d at 1048-49 (citing Brown v. Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005)).  The administrative appeal system can be found in title 15, sections 3084.1, 3084.5, and 3084.6 of the California Code of Regulations.  See Brown, 422

08cv1498 JM (RBB)

1   F.3d at 929-30 (citing Cal. Code Regs. tit. 15, §§ 3084.1(a),

2   3084.5(a)-(b), (e)(1)-(2), 3084.6(c)).

3       To comply with the CDC's administrative grievance procedure,

4   an inmate must file his grievance at the informal level "within 15

5   working days of the event or decision being appealed . . . ."  Cal.

6   Code Regs. tit. 15, § 3084.6(c) (2009); see also Brown, 422 F.3d at

7   929.  An inmate must proceed through all levels of the

8   administrative grievance process before initiating a § 1983 suit in

9   federal court.  See Vaden, 449 F.3d at 1051.

10      A prisoner's grievances must be "sufficient under the

11  circumstances to put the prison on notice of the potential claims

12  and to fulfill the basic purposes of the exhaustion requirement."

13  Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001).

14  Exhaustion serves several important goals, including "allowing a

15  prison to address complaints about the program it administers

16  before being subjected to suit, reducing litigation to the extent

17  complaints are satisfactorily resolved, and improving litigation

18  that does occur by leading to the preparation of a useful record."

19  Jones v. Bock, 549 U.S. 199, 219 (2007) (citing Woodford v. Ngo,

20  548 U.S. 81, 88-91 (2006); Porter v. Nussle, 534 U.S. 516, 524

21  (2002)).

22      **3.   Plaintiff's Failure To Exhaust**

23      Defendants state that Pough only exhausted his claims

24  concerning law library access, hot meals, and dental care.  (Defs.'

25  Mot. Dismiss & Sever Attach. #1 Mem. P. & A. 18.)  Defendants argue

26  Plaintiff did not exhaust his equal protection claim and the

27  portion of his living-conditions claim involving the distribution

28  of disinfectants, the presence of mice and insects, and the

1    exposure to pesticides.  (Id. at 18, 23-24.)  Also, they contend

2    Plaintiff did not exhaust his claims relating to outdoor exercise

3    and medical care for his shoulder condition.  (Id.)  Defendants

4    move to dismiss these claims pursuant to the unenumerated portions

5    of Rule 12(b) on the ground that Plaintiff has not properly

6    exhausted his administrative remedies.  (Id. at 16); Fed. R. Civ.

7    P. 12(b).

8              **a.    Count One:  Denial of Equal Protection of the Laws**

9         In count one, Pough alleges he was denied equal protection of

10   the laws when Defendants discriminated against him, due to his

11   race, by assigning school and work opportunities to other prisoners

12   instead of Plaintiff.  (Third. Am. Compl. 25.)  Defendants contend

13   Pough did not file an administrative grievance concerning a denial

14   of programming opportunities or related discrimination.  (Defs.'

15   Mot. Dismiss & Sever Attach. #1 Mem. P. & A. 18; id. Attach. #4 at

16   6; id. Attach. #3 at 6.)

17        Plaintiff, on the other hand, claims he filed a 602 grievance

18   on March 26, 2007, complaining that he was being passed over for

19   programming opportunities.  (Pl.'s Opp'n 11-12.)  Pough alleges the

20   grievance was date stamped as received by prison officials on March

21   28, 2007.  (Id. at 12.)  Plaintiff contends he did not receive a

22   response until July 11, 2007, which was approximately 106 days

23   after he submitted the grievance.  (Id.)  He argues that any

24   failure to exhaust his equal protection claim was caused by CDC's

25   failure to comply with its self-imposed deadlines for responding to

26   inmate appeals.  (Id. (quoting Cal. Code Regs. Tit. 15 §

27   3084.6(b)(1)).)

28

But in their Reply, Defendants state that even if Plaintiff submitted such an appeal, he failed to provide the Court with a copy of the grievance, in spite of the Wyatt Notice. (Defs.' Reply 4; Defs.' Mot. Dismiss & Sever Attach. #5 Wyatt Notice.) Defendants argue that assuming there was a delay in responses, Plaintiff should have pursued the alleged 602 through all four review levels. (Defs.' Reply 4 (citing Cal. Code Regs. Tit. 15 § 3084.6(b)(6)).) They contend Pough's failure to appeal the July 11, 2007, decision violates the fifteen-day prisoner appeal time limit, which does not render his administrative remedies unavailable. (Id. at 5 (citing Cal. Code Regs. tit. 15, § 3084.6(c)).)

In ruling on Defendants' Motion, the Court may "look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119-20 (citing Ritza, 837 F.2d at 369). Although Plaintiff did not provide a copy of the 602 with his Opposition, the grievance was previously submitted as exhibit "Z" to his Third Amended Complaint. (Third. Am. Compl. Attach. #1 Ex. Z.) In his informal grievance dated March 26, 2007, Pough states: "I have been without a job, and I have been disciplinary free, still I am classified as A2B, for two years many other[] inmates that have been here for far less time th[a]n I, have gotten jobs an[d] have been reclassified as A1A." (Id.) On July 11, 2007, Prison official L. White responded to Plaintiff's grievance, "You are #336 on the support services waiting list and #125 for Pre Voc." (Id.)

Even if the Court were to accept Pough's representation that he properly submitted this informal grievance, he did not proceed beyond the informal level and pursue the three-step review process.

16

08cv1498 JM (RBB)

See <u>Woodford</u>, 548 U.S. at 90.  CDC administrative procedures are
not properly exhausted until an inmate has pursued a grievance
through all available levels of review.  <u>Brown</u>, 422 F.3d at 935;
<u>Butler v. Adams</u>, 397 F.3d 1181, 1183 (9th Cir. 2005); <u>Hazleton</u>, 358
F. Supp. 2d at 929 (citations omitted).  Pough could have appealed
the untimely grievance response, but he chose to file this lawsuit
instead.  Because Plaintiff did not follow prison grievance
policies, the equal protection claim is unexhausted.

Existing Ninth Circuit case law directs the district court to
dismiss unexhausted claims without prejudice.  <u>Vaden</u>, 449 F.3d at
1051 (citing <u>Wyatt</u>, 315 F.3d at 1120).  But <u>Vaden</u> and <u>Wyatt</u> were
decided prior to <u>Woodford</u>.  Since the Supreme Court's decision in
<u>Woodford</u>, it may no longer be appropriate to dismiss Plaintiff's
Third Amended Complaint with leave to amend if it is too late for
him to properly exhaust administrative remedies.  An inmate must
submit his grievance "within 15 working days" of the unacceptable
lower level decision.  Cal. Code Regs. tit. 15, § 3084.6(c).
Because Pough did not submit a first formal level appeal within
fifteen days of his informal level response, and he has not been
housed at Centinela since March 28, 2008, any attempt to file the
grievance now is untimely and no exceptions apply.  <u>See</u> Cal. Code
Regs. tit. 15, § 3084.6(c)); <u>Woodford</u>, 548 U.S. at 95-96; <u>see also</u>
<u>Booth</u>, 532 U.S. at 741 (exceptions to the exhaustion requirement
are limited) (footnote omitted).  Therefore, Plaintiff's equal
protection claim should be **DISMISSED WITH PREJUDICE.**

       **b.   Count Two:  Inadequate Living Conditions**

In count two of his Third Amended Complaint, Plaintiff makes
numerous allegations regarding inadequate living conditions at

Centinela.  (Third. Am. Compl. 26-27, 29-31.)  Pough complains that kitchen workers do not use hairnets.  (Id. at 27.)  Inmates are not given cleaning products or disinfectants during lockdowns to prevent the spread of disease.  (Id.)  He asserts the kitchen facility is unsanitary, and he saw cockroaches near food trays as well as mice and insects inside the prison. (Id.)  Finally, he alleges he was exposed to pesticides when the prison was being fumigated.  (Id.)

### i.   Hairnets

Pough properly pursued a 602 to the Director's level regarding kitchen workers' inadequate use of hairnets.  (Defs.' Mot. Dismiss & Sever Attach. #3 Decl. Grannis Ex. C.)  The grievances in which Pough makes this complaint primarily allege the denial of hot meals.  (Id.; id. Attach. #4 Decl. DeGeus Ex. D.)  A claim is exhausted, however, when "plaintiff's grievances were sufficient under the circumstances to put the prison on notice of the potential claims and to fulfill the basic purposes of the exhaustion requirement."  Irvin, 161 F. Supp. 2d at 1135.

Although the grievances primarily complain about the temperature of meals, prison officials were nonetheless put on notice of Plaintiff's hairnet concern.  See id.  Pough complained about hairnet usage in his first level grievance by stating, "Meals are served by CDCR representatives wearing baseball caps."  (Defs.' Mot. Dismiss & Sever Attach. #4 Decl. DeGeus Ex. D at 29.)  Plaintiff requested that workers should "[c]omply with the use of hair nets pursuant to health and safety standards."  (Id.)  Officials acknowledged in their responses to his second and Director's level appeals that Pough has "concerns with the food

18

being served by CDCR staff merely wearing baseball caps as hair covering" instead of hairnets, yet they found the issue was moot because prison officials concluded that the use of baseball caps complied with health and safety standards.  (Id. at 32-34; id. Attach. #3 Decl. Grannis Ex. C at 4.)

Pough properly put the prison on notice of this claim.  See Irvin, 161 F. Supp. 2d at 1135.  The portion of Plaintiff's living conditions claim involving the inadequate use of hairnets is therefore fully exhausted.

### ii.   Disinfectants, unsanitary kitchen, mice and insects, exposure to pesticides

Plaintiff also submitted a grievance alleging he was not given cleaners or disinfectants during lockdowns.  (Third. Am. Compl. Attach. #1 Ex. Q at 1.)  Centinela officials granted the grievance at the first formal level of review, and Plaintiff did not pursue it beyond the first level.  (Id. at 3; Defs.' Mot. Dismiss & Sever Attach. #4 Decl. DeGeus Ex. C at 28.)  Pough also did not submit a grievance claiming the kitchen was unsanitary or that he saw cockroaches near food trays.  Nor did he submit a grievance regarding the presence of mice and insects or the exposure to pesticides during fumigations.  (Defs.' Mot. Dismiss & Sever Attach. #4 Decl. DeGeus at 6; id. Attach. #3 Decl. Grannis at 6.) Because Plaintiff did not follow the CDC's grievance process for these claims, they are unexhausted and should not be considered by the Court.  See Vaden, 449 F.3d at 1048.

Since the Supreme Court's decision in Woodford, it may no longer be appropriate to dismiss Plaintiff's Third Amended Complaint with leave to amend if it is too late for him to properly

1   exhaust administrative remedies.  An inmate must submit his

2   grievance "within 15 working days" of the unacceptable lower level

3   decision.  Cal. Code Regs. tit. 15, § 3084.6(c).  Because Pough did

4   not submit a second level appeal within fifteen days of his first

5   formal level response, any attempt to file it now is untimely and

6   no exceptions apply.  See Cal. Code Regs. tit. 15, § 3084.6(c));

7   Woodford, 548 U.S. at 95-96; see also Booth, 532 U.S. at 741

8   (exceptions to the exhaustion requirement are limited) (footnote

9   omitted).  Therefore, the portion of Plaintiff's living conditions

10  claim concerning the lack of disinfectant distribution, kitchen

11  sanitation, cockroaches near food trays, the presence of mice and

12  insects, and the exposure to pesticides should all be **DISMISSED**

13  **WITH PREJUDICE.**

14                  **iii. Denial of outdoor exercise**

15      Also in count two, Plaintiff asserts he was denied outside

16  exercise and confined to his cell for more than 100 consecutive

17  days and was unable to exercise or even walk indoors.  (Third Am.

18  Compl. 28.)  As a result, Pough argues he suffered from headaches,

19  atrophy, and muscle cramps.  (Id.)

20      Plaintiff submitted grievances at the informal, first formal,

21  second formal, and Director's review levels.  (Id. Attach. #1 Ex. Y

22  at 1-2.)  The appeal was screened out at the Director's level on

23  August 3, 2007, and returned to Plaintiff because it lacked

24  necessary documentation.  (Defs.' Mot. Dismiss & Sever Attach. #1

25  Mem. P. & A. 18 (citing id. Attach. #3 Decl. Grannis at 3; id. Ex.

26  A at 1.))  Pough notes that the missing document was a Program

27  Status Report.  (Pl.'s Opp'n 14.)

28

                                    20

Defendants move to dismiss the outdoor exercise claim because Plaintiff did not exhaust his administrative remedies through the Director's level. (Defs.' Mot. Dismiss & Sever Attach. #1 Mem. P. & A. 19.) Plaintiff claims the appeal was improperly screened out because prison officials could have secured the report themselves by using methods Pough did not have access to, like facsimile, telephone, and the internet. (Pl.'s Opp'n 14-15.) In their Reply, Defendants state that California regulations do not impose a duty on prison officials to provide inmates with missing documentation needed to complete their appeals. (Defs.' Reply 5 (citing Cal. Code Regs. Tit. 15, § 3084.3(c)(5)).) In fact, adherence to these regulations determines whether an inmate's remedies are exhausted. (Id. at 5-6 (citing Jones, 549 U.S. at 218).)

An inmate appeal may be rejected if necessary supporting documents are not attached. Vlasich v. Hoffman, No. 03-15349, 2003 U.S. App. LEXIS 17119, at *3 (9th Cir. Aug. 11, 2003) (citing Cal. Code Regs. tit. 15, § 3084.3(c)(4)-(5)). The appeals coordinator who rejects the grievance must complete an Appeals Screening Form that provides clear instructions for the inmate to follow in order to qualify the appeal for processing. Cal. Code Regs. tit. 15, § 3084.3(d).

Pough explains that he understood his appeal was defective only because it lacked the Program Status Report and that resubmission of his appeal with the report would have eliminated any defect. (Pl.'s Opp'n 14.) Plaintiff claims he was unable to provide the status report and requested an interview to discuss the matter further. (Id. at 14-15.) He subsequently submitted an "Inmate Request for Interview" regarding the status report. (Id.

1   at 14.)  But Pough has not provided the Court a copy of his

2   interview request regarding the Program Status Report or any other

3   documents evidencing an attempt to obtain the report.  Even if

4   Plaintiff asked for an interview and received no response, he

5   nonetheless failed to try to obtain the Program Status Report and

6   timely resubmit his Director's level grievance so as to fully

7   exhaust his outdoor exercise claim.  See Brown, 422 F.3d at 929-30.

8        Plaintiff failed to comply with the prison's grievance

9   procedures before filing suit in federal court.  See Vaden, 449

10  F.3d at 1051; 142 U.S.C. § 1997e(a).  He no longer has time to

11  exhaust his remedies by resubmitting his outdoor exercise appeal

12  with the proper documentation; nor are there applicable exceptions.

13  Cal. Code Regs. tit. 15, § 3084.6(c); see Booth, 532 U.S. at 741;

14  Woodford, 548 U.S. at 95-96.  Accordingly, Plaintiff's claim

15  regarding out-of-cell exercise should be **DISMISSED**.

16       The question, however, is whether Pough should be given leave

17  to amend.  The record is incomplete.  The Court cannot conclude

18  whether Plaintiff chose not to resubmit this grievance or was

19  foreclosed from doing so.  In his Opposition, Pough makes a general

20  reference to not having access to the status report and receiving

21  no response to his request for an interview with prison officials

22  about the need for the report.  (See Opp'n 14-15.)  Plaintiff

23  should be given leave to amend this claim to allege any relevant

24  facts relating to obtaining the status report and resubmitting this

25  grievance.  See Hoaglen v. Reinke, No. CV-08-272-S-BLW, 2009 U.S.

26  Dist. LEXIS 82860, at **18-19, 25 (D. Idaho Sept. 11, 2009)

27  (dismissing claims without prejudice); Tanksley v. CDC Avenal State

28  Prison Officers, No. 08-CV-00732-LJO-SMS PC, 2009 U.S. Dist. LEXIS

1  60939, at **6-7 (E.D. Cal. July 16, 2009) (noting that Plaintiff

2  offered "no explanation for his failure to correct and resubmit the

3  grievance" but recommending a dismissal without prejudice); <u>Adams</u>

4  <u>v. Kernan</u>, No. CIV S-07-0707-GEB-EFB P, 2009 U.S. Dist. LEXIS

5  20126, at *18 (E.D. Cal. Mar. 13, 2009) (same).  This claim should

6  be **DISMISSED WITHOUT PREJUDICE** and with leave to amend.

7              c.   **Count Three:  Inadequate Medical Care**

8                   i.   **Shoulder condition**

9       In count three, Pough contends he was denied adequate medical

10 care for his shoulder condition.  (Third. Am. Compl. 32.)  He

11 claims Centinela officials ignored his medical request to receive

12 physical therapy.  (<u>Id.</u> at 33 (citing <u>id.</u> Attach. #1 Ex. HH).)

13 Plaintiff was diagnosed with degenerative cartilage in his shoulder

14 after transferring to CMC and argues Centinela's inadequate care

15 caused the deterioration.  (<u>Id.</u> at 34.)

16      Plaintiff has not shown that he even attempted to submit a 602

17 grievance for this claim.  The medical claim relating to Pough's

18 shoulder injury is therefore unexhausted and cannot be considered.

19 <u>See</u> <u>Woodford</u>, 548 U.S. at 95 (sanctioning noncompliance with

20 procedural rules gives prisoners an incentive to comply.)

21 Plaintiff no longer has time to exhaust his administrative

22 remedies.  <u>See</u> Cal. Code Regs. tit. 15, § 3084.6(c); <u>Woodford</u>, 548

23 U.S. at 95-96.  Pough's claim concerning inadequate medical care

24 for a shoulder condition should be **DISMISSED WITH PREJUDICE.**

25                   ii.   **Psychological condition**

26      Pough alleges in count three he has suffered psychological

27 problems as a result of mistreatment by prison officials.  (Third

28

1  Am. Compl. 37.)  In particular, he claims that he has suffered from

2  Battered Prison Syndrom.  (Id.)

3      Plaintiff did not submit a grievance regarding the

4  prison's failure to provide medical care for his psychological

5  problems.  It appears Pough's claim that he has Battered Prison

6  Syndrom is offered as evidence that he suffered damages caused by

7  Defendants' alleged constitutional violations.  (See id. at 37-38.)

8  Plaintiff may seek to introduce evidence that he has psychological

9  problems to show he suffered damages as a result of the alleged

10 violations; however, to the extent Plaintiff is attempting to

11 allege a claim for Battered Prison Syndrome, the claim is

12 unexhausted.  The Court should not consider it as a separate cause

13 of action, and any claim for relief should be **DISMISSED WITH**

14 **PREJUDICE**.  See Vaden, 449 F.3d at 1051; see also Woodford, 548

15 U.S. at 95.

16          d.   **Exhaustion Summary**

17      Defendants do not challenge, and Plaintiff has exhausted, the

18 claims concerning access to law libraries, hot meals, use of

19 hairnets, and dental care.  (Defs.' Mot. Dismiss & Sever Attach. #1

20 Mem. P. & A. 18; Third. Am. Compl. Attach. #1 Ex. A; id. Attach. #1

21 Ex. M; Defs.' Mot. Dismiss & Sever Attach. #3 Decl. Grannis Ex. C;

22 Third Am. Compl. Attach. #1 Ex. EE at 4-5.)  Accordingly, Pough

23 should be permitted to proceed with these four exhausted claims.

24 See Jones, 549 U.S. at 221.  But Plaintiff's claims regarding an

25 unsanitary kitchen, the presence of mice and insects, and exposure

26 to pesticides should be **DISMISSED WITHOUT PREJUDICE.**  Pough's

27 claims regarding equal protection, lack of disinfectant, lack of

28 outdoor exercise, and inadequate medical care for his shoulder

1  condition and Battered Prison Syndrome were not exhausted and

2  should be **DISMISSED WITH PREJUDICE.**

3  **B.    Plaintiff's Claims Are Without Merit**

4       Defendants move to dismiss the Third Amended Complaint under

5  Federal Rule of Civil Procedure 12(b)(6) because each of

6  Plaintiff's allegations fail to state a federal claim upon which

7  relief can be granted.  (Defs.' Mot. Dismiss & Sever Attach. #1

8  Mem. P. & A. 4.)  The Court may grant a motion to dismiss for

9  failure to state a claim if the complaint does not contain enough

10 facts to state a claim that is "plausible on its face."  Bell Atl.

11 Corp., 550 U.S. at 570.  "[F]acial plausibility [is] when the

12 plaintiff pleads factual content that allows the court to draw the

13 reasonable inference that the defendant is liable for the

14 misconduct alleged."  Ashcroft v. Iqbal, __ U.S. at __, 129 S.Ct.

15 at 1949.

16      **1.    Count One:  Denial of Access to the Courts**

17      "Under the First and Fourteenth Amendments to the

18 Constitution, state prisoners have a right of access to the

19 courts."  Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007)

20 (citing Lewis v. Casey, 518 U.S. 343, 346 (1996)).  The right of

21 access requires prison officials to provide inmates the opportunity

22 to prepare, serve, and file court documents in cases affecting

23 their liberty.  Id. at 1075-76 (quotation omitted).  But prisoners

24 do not have a constitutional right to a law library.  Lewis, 518

25 U.S. at 350-51.  Law libraries are just one means of assuring

26 prisoners meaningful access to the courts.  Id.

27      There are two types of access to courts claims:  backward-

28 looking and forward-looking.  See Christopher v. Harbury, 536 U.S.

1  403, 413-14 (2002).  A backward-looking claim concerns a lost

2  opportunity to litigate.  Id. at 413-14.  A forward-looking claim,

3  on the other hand, concerns "official action [that] is presently

4  denying an opportunity to litigate for a class of potential

5  plaintiffs."  Id. at 413.  Pough's cause of action is a backward-

6  looking claim.  He argues that Defendants' prison policies denied

7  him adequate time in the library during race-related lockdowns,

8  which caused his federal habeas corpus petition to be dismissed as

9  untimely.  (Third. Am. Compl. 12, 20.)  To adequately plead a

10  backward-looking denial of access claim, Plaintiff must allege

11  three elements:  "1) the loss of a 'nonfrivolous' or 'arguable'

12  underlying claim; 2) the official acts frustrating the litigation;

13  and 3) a remedy that may be awarded as recompense but that is not

14  otherwise available in a future suit."  Phillips, 477 F.3d at 1076

15  (citing Christopher, 536 U.S. at 413-14).

16                 a.   **Non-frivolous Nature of the Underlying Claim**

17       To have standing to bring this claim, Plaintiff must allege he

18  suffered an actual injury.  Lewis, 518 U.S. at 351; Vandelft v.

19  Moses, 31 F.3d 794, 798 (9th Cir. 1994).  To succeed, a prisoner

20  must have been denied the necessary tools to litigate a

21  nonfrivolous claim attacking a conviction, sentence, or conditions

22  of confinement.  Christopher, 536 U.S. at 415; Lewis, 518 U.S. at

23  353 & n.3.  Plaintiff need not show that he would have been

24  successful on the merits of his claims, but only that they were not

25  frivolous.  Allen v. Sakai, 48 F.3d 1082, 1085 & n.12 (9th Cir.

26  1994).  "A claim is frivolous if it is without arguable merit

27  either in law or fact."  Bilal v. Driver, 251 F.3d 1346, 1349 (11th

28  Cir. 2001) (citations omitted); see also Carroll v. Gross, 984 F.2d

1   392, 393 (11th Cir. 1993) (per curiam) (stating that frivolous

2   claims are those with "little or no chance of success[]") (internal

3   citations omitted).

4       Pough filed a First Amended Petition for Writ of Habeas Corpus

5   in federal court asserting his guilty pleas at trial were

6   involuntary and that he received ineffective assistance of counsel.

7   (Third. Am. Compl. Attach. #1 Ex. C at 3.)  Also, Plaintiff argued

8   that the trial court abused its discretion by summarily denying his

9   motion to withdraw his pleas and violated his right to a jury trial

10  by imposing an upper-term sentence.  (<u>Id.</u>)  There is nothing before

11  the Court to suggest that the claims Pough presented in his habeas

12  petition were frivolous.  Plaintiff's Third Amended Complaint

13  alleges a plausible claim that Pough's habeas corpus petition was a

14  nonfrivolous attack on his criminal conviction and sentence.

15          **b.   <u>Causation</u>**

16      Plaintiff must also show "the alleged violation of his rights

17  was proximately caused" by a state actor.  <u>Phillips</u>, 477 F.3d at

18  1077 (citing <u>Crumpton v. Gates</u>, 947 F.2d 1418, 1420 (9th Cir.

19  1991)).  The proximate cause analysis focuses on whether it was

20  foreseeable that the state actor's conduct would result in a

21  deprivation of the prisoner's right to access the courts.  <u>Id.</u>

22  (citing <u>Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning</u>

23  <u>Agency</u>, 216 F.3d 764, 784-85 (9th Cir. 2000)).

24      To show his right of access to the courts was violated by

25  inadequate library time, Plaintiff must allege facts showing that

26  "shortcomings in the library or legal assistance program hindered

27  his efforts to pursue a legal claim." <u>Lewis</u>, 518 U.S. at 351.

28  Notably, "an inmate cannot establish relevant actual injury simply

1  by establishing that his prison's law library or legal assistance

2  program is subpar in some theoretical sense." Id.

3      Pough asserts his inadequate access to the law library

4  prevented him from timely pursuing habeas corpus relief. (Third.

5  Am. Compl. 19-20.) He alleges that he was "restricted to his

6  housing unit during race-related lockdown[s] for weeks and [months]

7  at a time, and denied access to the facility law library, [and]

8  subsequently denied mean[ing]ful access to the courts[.]" (Id. at

9  19 (citation omitted).) Plaintiff contends that Defendants

10 Almager, Ryan, Bradley, and Grannis caused him harm because AEDPA

11 "does[] not recognize Penitentiary Lockdown or modified programs as

12 'unreasonable' for the purpose of a delay in the filing of a

13 petition . . . ." (Id. at 21.) As a result, Pough's federal

14 habeas corpus petition was time barred. (Id.) Plaintiff also

15 complains that during facility lockdowns, the prison did not

16 provide him modified legal access programs or access to a person

17 trained in the law. (Id.)

18     Plaintiff does not state exact dates of each lockdown he

19 alleges interfered with his access to the law library, but it

20 appears that the lockdowns generally occurred between November or

21 December 2006 and March 2007. Pough explains, "In December of

22 2006, Centinela . . . had been on lockdown for approximately thirty

23 (30) days . . . ." (Id. at 22.) "[On] January 30, 2007, Centinela

24 . . . was still on lockdown . . . ." (Id.) Plaintiff was

25 permitted a two-hour visit to the law library on February 6, 13,

26 20, and 21 in 2007, but was unable to access the library on

27 February 6 and 21 because the facility was on lockdown. (Id. at

28

1    23.)  He also mentions that on March 9, 2007, the prison was again

2    on lockdown.  (Id.)

3         Elsewhere in the Third Amended Complaint, Plaintiff asserts

4    that his "total time of physical access in the law library [was]

5    less than sixty (60) hours over the period of a year." (Id. at

6    12.)  But Pough does not explain when this occurred or whether he

7    took advantage of all the library time available to him during that

8    period.

9         Pough presented his complaints about his access to the law

10   library during lockdowns to the court in connection with his

11   federal habeas corpus petition.  (Defs.' Mot. Dismiss & Sever

12   Attach. #2 Req. Judicial Notice Ex. A; Pl.s' Req. Judicial Notice

13   Attach. #1 Ex. A.)  After briefing of the current Motion was

14   completed, United States District Judge Barry Ted Moskowitz issued

15   an order dismissing Pough's Petition for a Writ of Habeas Corpus.

16   Pough v. Marshall, et al., Case No. 08-cv-1776 BTM (POR) (S.D. Cal.

17   Sept. 16, 2009) (order) [doc. no. 28].

18        Judge Moskowitz wrote:

19            From January 17, 2006, when his conviction became
         final, until November 21, 2006, when the lockdown began,
20       a period of 308 days, Petitioner indicates that he had
         access to the law library and his legal materials.
21       Although he contends that he had less than sixty hours of
         library time during that period, and that meaningful
22       research was difficult due to overcrowding and lack of a
         reasonable amount of time in the library, he has not
23       alleged facts which demonstrate that he was prevented
         from filing his federal petition during that time.
24       However, assuming equitable tolling was available during
         the lockdown period, and 57 days remained on the
25       limitations period when tolling due to the lockdown
         began, this action is still untimely.  Under this
26       scenario the limitations period would be equitably tolled
         from November 21, 2006 until, at the very latest, June 4,
27       2008, when Petitioner indicates that he had been
         transferred to another institution where access to the
28       law library was available and he was in possession of his
         personal property.  As of June 4, 2008, Petitioner's

                                  29                            08cv1498 JM (RBB)

state supreme court habeas petition, which had been filed
on January 4, 2008, was under submission.  Assuming that
petition statutorily tolled the limitations period,
tolling would have ended when the petition was denied on
July 9, 2008, and Petitioner would have had 57 days left
when the limitations period resumed running on July 10,
2008.  He initiated this action on September 25, 2008, 81
days later.

Id. at 3 (citations omitted).  Judge Moskowitz added, "[A]ssuming

equitable tolling was available during the time period Petitioner

was on lockdown and was not allowed access to the law library,

. . . this action is nevertheless untimely."  Id. at 6.

Thus, the district court found that Pough's federal petition

was untimely even when the period of time during which Plaintiff

was on lockdown was excluded from the limitations period.  Pough

has not alleged a sufficient causal connection between the

allegedly inadequate library access and his untimely habeas

petition.  See Bryant v. Arizona Attorney General, 499 F.3d 1056,

1060 (9th Cir. 2007) (citations omitted); see also Lewis, 518 U.S.

at 351.

Additionally, several courts have refused to find

constitutional violations where inmates' access to law libraries

was restricted.  See, e.g., Rhinehart v. Gomez, No. 93cv3747, 1995

U.S. Dist. LEXIS 8382, at **20-21 (N.D. Cal. June 8, 1995) (finding

no denial of access to courts where prisoner could access law

library for only two hours every two weeks); Zatko v. Rowland, 835

F. Supp. 1174, 1178 (N.D. Cal. 1993) (holding that two hours of

access to library per week was reasonable); Magee v. Waters, 810

F.2d 451, 452 (4th Cir. 1987) (finding one hour per week in law

library of city jail did not violate inmate's constitutional

rights); Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851,

858 (9th Cir. 1985) (noting that prisoners are not guaranteed

08cv1498 JM (RBB)

1    unlimited access to the law library).  Plaintiff's Third Amended

2    Complaint does not adequately allege an injury caused by

3    Defendants' failure to provide him law library access during

4    facility lockdowns.

5         c.   **Remedy**

6         The premature nature of this claim also warrants its

7    dismissal.  Assuming Pough alleged facts sufficient to establish

8    the loss of a nonfrivolous claim that was proximately caused by a

9    state actor, he fails to show he has no remedy other than the

10   relief available in this denial-of-access suit.  See Phillips, 477

11   F.3d at 1078-79.

12        The third element is satisfied where the plaintiff has no

13   remedy by which he can obtain relief other than the one requested

14   in his denial-of-access suit.  Id. at 1076 (citing Christopher, 536

15   U.S. at 413-14).  "A backward-looking denial-of-access claim [must]

16   provide a remedy that could not be obtained on an existing claim."

17   Christopher, 536 U.S. at 428.  Premature access to courts claims

18   should be dismissed without prejudice.  Delew v. Wagner, 143 F.3d

19   1219, 1222-23 (9th Cir. 1998); see Karim-Panahi v. Los Angeles

20   Police Dep't., 839 F.2d 621, 625 (9th Cir. 1988) (ordering

21   dismissal without prejudice where plaintiff's allegations would be

22   mooted if he were to succeed in claims that remained pending)

23   (citations omitted); see also Logan v. Doe, No. 1:02-cv-06428-AWI-

24   SMS PC, 2007 U.S. Dist. LEXIS 28559, at *29-30 (E.D. Cal. Apr. 18,

25   2007) (finding no evidence that plaintiff "forever lost the ability

26   to challenge his conviction as a result of the dismissal of the

27   petition" when he was simultaneously litigating similar issues).

28

31

1    After dismissing Pough's federal habeas petition as untimely,

2    Judge Moskowitz issued a Certificate of Appealability.  Pough v.

3    Marshall, et al., Case No. 08-cv-1776 BTM (POR) (S.D. Cal. Sept.

4    16, 2009) (order) [doc. no. 28].  The Ninth Circuit received

5    Pough's notice of appeal and set a time schedule for the appeal.

6    Pough v. Marshall, et al., Case No. 09-56644, (9th Cir. Oct. 15,

7    2009) (time schedule order) [doc. no. 33].  Prior to the resolution

8    of the appeal, it is impossible to determine whether Plaintiff has

9    lost all other available remedies by which he could obtain relief.

10   See Phillips, 477 F.3d at 1079; see also Delew, 143 F.3d at 1223

11   (dismissing § 1983 claim without prejudice while wrongful death

12   action was pending in state court because plaintiffs had not shown

13   denial of access rendered all remedies ineffective); Karim-Panahi,

14   839 F.2d at 625 (stating that because the resolution of the instant

15   suit remained in question, plaintiff's claim was not ripe for

16   judicial consideration.)

17       Plaintiff's legal access claim should be **DISMISSED WITHOUT**

18   **PREJUDICE**, pending resolution of the Ninth Circuit appeal.  Pough

19   may seek to amend this claim after his habeas corpus petition is

20   fully resolved.

21          d.   <u>Supervisor Liability</u>

22       Alternatively, Pough fails to state a claim because he has not

23   alleged how Defendants Almager, Ryan, Bradley and Grannis caused

24   the constitutional violation.

25       Section 1983 of the Civil Rights Act does not authorize

26   bringing a cause of action based on respondeat superior liability.

27   Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692-93 (1978) ("[T]he

28   fact that Congress did specifically provide that A's tort became

1  B's liability if B 'caused' A to subject another to a tort suggests

2  that Congress did not intend § 1983 liability to attach where such

3  causation was absent.") (footnote omitted); see also Motley v.

4  Parks, 432 F.3d 1072, 1081 (9th Cir. 2005).  State officials are

5  subject to suit in their personal capacity if "they play an

6  affirmative part in the alleged deprivation of constitutional

7  rights."  King v. Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987) (citing

8  Rizzo v. Goode, 423 U.S. 362, 377 (1976)).  A supervisor may be

9  found personally liable if he "set[s] in motion a series of acts by

10 others . . . , which he knew or reasonably should have known, would

11 cause others to inflict the constitutional injury."  Motley, 432

12 F.3d at 1081 (quoting Larez v. City of Los Angeles, 946 F.2d 630,

13 646 (9th Cir. 1991)).

14      The Third Amended Complaint alleges Warden Almager "failed to

15 provide Plaintiff with Constitutionally adequate physical access to

16 Centinela's facility law library during institutional lockdowns."

17 (Third Am. Compl. 12.)  Pough explains that Almager had an

18 "uncodified policy" that limited his access to the law library.

19 (Id. at 12, 17-18.)  He also claims that Associate Warden Ryan took

20 part in establishing and enforcing these policies.  (Id. at 13.)

21 Plaintiff cites sections of the Departmental Operations Manual,

22 California Code of Regulations, and changes to California

23 Department of Correction and Rehabilitation regulations that he

24 presumably believes Almager failed to follow.  (Id. at 12.)

25 Finally, he states Almager "was aware of, and acquiesced in, the

26 unconstitutional restrictions and conditions of Plaintiff."  (Id.

27 at 18.)

28

1    Without more than conclusory allegations that Defendants

2  Almager and Ryan were aware of or caused constitutional violations,

3  Plaintiff fails to state a claim against them based on anything

4  other than supervisory liability.  For this additional reason, this

5  claim against Almager and Ryan should be **DISMISSED WITHOUT**

6  **PREJUDICE.**

7    Plaintiff's allegations against Ryan, Bradley, and Grannis

8  also fail because those claims appear to be based on their handling

9  of Pough's inmate grievances and appeals.  Plaintiff asserts that

10 Ryan, Bradley, and Grannis each were "aware of, and acquiesced in,

11 the unconstitutional restrictions and conditions of Plaintiff."

12 (<u>Id.</u> at 19.)  Plaintiff adds that Ryan reviewed his grievance at

13 the first formal level of review, and Bradley reviewed Pough's

14 appeal.  (<u>Id.</u>)

15    42 U.S.C. § 1983 provides the following:

16        Every person who, under color of any statute,
         ordinance, regulation, custom, or usage, of any State or
17       Territory or the District of Columbia, subjects, or
         causes to be subjected, any citizen of the United States
18       or other person within the jurisdiction thereof to the
         deprivation of any rights, privileges, or immunities
19       secured by the Constitution and laws, shall be liable to
         the party injured in an action at law, suit in equity, or
20       other proper proceeding for redress . . . .

21 42 U.S.C.A. § 1983.

22    Section 1983 "is not itself a source of substantive rights,

23 but merely provides a method for vindicating federal rights

24 elsewhere conferred."  <u>Graham v. Connor</u>, 490 U.S. 386, 393-94

25 (1989) (internal citations omitted); <u>Crumpton</u>, 947 F.2d at 1420;

26 <u>see also</u> <u>Chapman v. Houston Welfare Rights Org.</u>, 441 U.S. 600, 617

27 (1979) (explaining that § 1983 "by itself does not protect anyone

28 against anything[]"); <u>Sprint Telephony PCS v. County of San Diego</u>,

1   490 F.3d 700, 717 (9th Cir. 2007).  "In § 1983 cases, it is the

2   constitutional right itself that forms the basis of the claim."

3   Crater v. Galaza, 508 F.3d 1261, 1269 (9th Cir. 2007) (emphasis

4   omitted).  "There is no legitimate claim of entitlement to a

5   grievance procedure."  Mann v. Adams, 855 F.2d 639, 640 (9th Cir.

6   1988) (citations omitted).

7        Because Pough fails to assert that Ryan, Bradley, and Grannis

8   took any action against him other than denying his grievances and

9   appeals, he has failed to allege a constitutional violation against

10  them.  Additionally, Plaintiff makes conclusory allegations that

11  Defendants "had an affirmative duty to provide Plaintiff with

12  Constitutionally adequate access to the courts . . . ."  (Third Am.

13  Comp. 20.)  But again, he does not state how they failed to do so

14  other than relying on supervisory liability.  See Shehee v.

15  Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (finding no liability

16  where plaintiff alleged defendants denied his administrative

17  grievance and failed to correct "alleged retaliatory behavior").

18  For these additional reasons, Plaintiff's legal access claim

19  against Ryan, Bradley, and Grannis should be **DISMISSED WITH**

20  **PREJUDICE**.[2]

21       **2.    Count Two:  Living Conditions as Cruel and Unusual**

22             **Punishment**

23

24  _____

25       [2] Almost as an aside, Pough alleges that Defendants
    discriminated against him "base[d] upon his membership in a
    protected class . . . ."  (Id. at 25.)  Defendants correctly point
26  out that "Plaintiff does not allege who discriminated against him,
    at what time, under what circumstances, and to what protected class
27  he belongs that motivated the discrimination."  (Defs.' Mot.
    Dismiss & Sever Attach. #1 Mem. P. & A. 11.)  If Pough is
28  attempting to allege an equal protection claim, he has failed to
    state a claim for relief.

1           **a.   Denial of Hot Meals and Inadequate Use of Hairnets**

2     Defendants seek to dismiss count two because Plaintiff fails

3 to state an Eighth Amendment claim against them for food service

4 amounting to cruel and unusual punishment. (Defs.' Mot. Dismiss &

5 Sever Attach. #1 Mem. P. & A. 12.)  Plaintiff asserts that during

6 lockdowns he was deprived of two regular hot meals and instead

7 received cold meals under conditions that prompted contamination.

8 (Third Am. Compl. 26, 38, 42-43, 46.)  He also alleges that kitchen

9 workers do not wear hairnets all the time, in violation of his

10 right to be free from cruel and unusual punishment.  (Id. at 5, 27,

11 38.)  Pough claims he "regularly found hair in food from

12 Centinela's State kitchen" and that some meals are served by

13 officers wearing baseball caps.  (Id. at 26-27.)

14     To satisfy the requirements for an Eighth Amendment

15 conditions-of-confinement claim, the prisoner must allege facts

16 sufficient to show that a prison official's acts or omissions

17 deprived him of the "minimal civilized measure of life's

18 necessities" and that the defendant acted or failed to act "in the

19 face of an unjustifiably high risk of harm that is either known or

20 so obvious that it should be known."  Farmer v. Brennan, 511 U.S.

21 825, 834, 836 (1994) (quotation and citation omitted).  "The

22 discrete basic human needs that prison officials must satisfy

23 include food, clothing, shelter, sanitation, medical care, and

24 personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107

25 (1986) (citing Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.

26 1982); see also Farmer, 511 U.S. at 832 (citations omitted)

27 (containing a list of basic necessities).  In complaints regarding

28 food, the prisoner must show he was deprived food in a quantity and

1  of a quality that was adequate to maintain his health.  See Keenan
2  v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996).  Additionally, a
3  prisoner must show defendants acted with deliberate indifference to
4  a substantial risk of serious harm.  See Farmer, 511 U.S. at 847;
5  Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

6      Pough alleges Defendants had actual knowledge of, and refused,
7  his request for alternative cell-feeding procedures because of the
8  grievances he submitted.  (Third Am. Compl. 26, 29-31.)
9  Plaintiff's assertions regarding the denial of hot meals are
10 insufficient to state an Eighth Amendment claim.  See LeMaire, 12
11 F.3d at 1456 (holding the fact that food is sometimes served cold
12 does not amount to a constitutional violation) (citations omitted);
13 Saunders v. Plummer, No. C-94-1007 DLJ, 1994 U.S. Dist. LEXIS 8249,
14 at *3 (N.D. Cal. June 9, 1994) (finding inmate's allegation that
15 meal trays were cold and milk was sometimes spoiled "did not come
16 remotely close" to alleging a cognizable claim); Jones v. City &
17 County of San Francisco, 976 F. Supp. 896, 910-11 (N.D. Cal. 1997)
18 (discussing food preparation).  Likewise, Pough's assertions
19 regarding hairnet usage are insufficient to state an Eighth
20 Amendment claim.  See Johnson v. Santa Clara County, No. C 00-1068
21 SI (pr), 2001 U.S. Dist. LEXIS 4526, at *5 (D. Cal. April 5, 2001)
22 (citation omitted) (stating that food handled without hairnets does
23 not amount to a violation of a prisoner's constitutional rights).

24     Pough is being fed adequately.  The denial of hot meals or the
25 inadequate use of hairnets "falls short of the threshold
26 deprivation necessary to form the basis of an Eighth Amendment
27 violation."  See LeMaire, 12 F.3d at 1456.  "'The fact that the
28 food occasionally contains foreign objects or sometimes is served

cold, while unpleasant, does not amount to a constitutional deprivation.'" Id. (quoting Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985)).  At most, Plaintiff states the cold food temperatures "prom[p]ted contamination." (Third Am. Compl. 26); see Jones, 976 F. Supp. at 910 (finding that inmates have a constitutional right to have food served under conditions that do not present an immediate danger to their health); Johnson, 2001 U.S. Dist. LEXIS 4326, at *4-5.  But his conclusory allegations do not state a plausible claim that the food service presents an immediate danger.

Even if the food service described posed a "sufficiently serious" risk to Plaintiff's health, he fails to allege facts that show Defendants were deliberately indifferent to the risk.  See Farmer, 511 U.S. at 836, 847.  Prison officials may escape liability "if they respond[] reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.  Pough was informed in his second level appeal response that a proposal was made to Warden Almager recommending new cell-feeding procedures and that Almager set up a committee to review the current procedures. (Third Am. Compl. 30; id. Attach. #1 Ex. SE at 3.)  And in his third level appeal response, Pough was advised that Warden Almager implemented new procedures and required cooks to randomly take the temperatures of food to ensure the hot temperature is maintained. (Defs.' Mot. Dismiss Attach. #3 Decl. Grannis Ex. C).

Pough attempts to state a claim against Navarro and Arellano based upon their supervisory responsibilities.  (Third Am. Compl. 42-43.)  He has not alleged sufficient facts to state a claim against them in their supervisory roles.  King v. Atiyeh, 814 F.2d

1   at 568.   Pough has not alleged facts sufficient to show deliberate

2   indifference.   See Farmer, 511 U.S. at 844.

3       For all these reasons, count two of Plaintiff's Third Amended

4   Complaint regarding cruel and unusual punishment due to the denial

5   of hot meals during prison lockdowns, seeing roaches near food

6   trays, seeing mice in the prison, breathing dissipated pesticide

7   fumes, and the inadequate use of hairnets should be **DISMISSED WITH**

8   **PREJUDICE.**

9       In addition, Defendants are correct that the claim relating to

10  outdoor exercise fails to allege specifics to state a claim for

11  relief.   (Defs.' Mot. Dismiss & Sever Attach. #1 Mem. P. & A. 13.)

12  Because this Court has recommended that Plaintiff be given leave to

13  allege further facts relating to the exhaustion of this claim, the

14  Court will likewise recommend that the outdoor exercise claim be

15  **DISMISSED WITHOUT PREJUDICE.**   Plaintiff must allege which

16  Defendants are charged with liability for this deprivation and

17  specifics concerning when the deprivation occurred.

18      **3.**   **Count Three:   Deliberate Indifference to Serious Medical**

19              **Needs**

20      Plaintiff argues in count three that he was denied adequate

21  medical care for his shoulder and cervical spine, and he was denied

22  adequate dental care, naming only Warden Almager as a Defendant.

23  (Third Am. Compl. 31-38, 46.)   Pough appears to complain that he

24  suffered for over two years before being diagnosed with chronic

25  arthritis, that he should have received physical therapy sooner,

26  and should have been given a "high quality multivitamin."   (Id. at

27  33.)   In addition, Plaintiff claims he waited more than two years

28  to have a teeth cleaning; he was not properly treated for a damaged

1   crown that caused him pain; and Almager was deliberately

2   indifferent to his dental care needs.  (Id. at 38.)

3       The Eight Amendment requires that inmates receive a system of

4   "ready access to adequate dental care." Hoptowit, 682 F.2d at

5   1253.  Two elements comprise an Eighth Amendment claim for

6   deliberate indifference to serious medical needs.  Jett v. Penner,

7   439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429

8   U.S. 97, 104 (1976)).  "First, the plaintiff must show a 'serious

9   medical need' by demonstrating that 'failure to treat a prisoner's

10  condition could result in further significant injury or the

11  "unnecessary and wanton infliction of pain."' [Citation omitted.]

12  Second, the plaintiff must show the defendant's response to the

13  need was deliberately indifferent." Id. (citing McGuckin v. Smith,

14  974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds by

15  WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en

16  banc)).

17      "Examples of serious medical needs include '[t]he existence of

18  an injury that a reasonable doctor or patient would find important

19  and worthy of comment or treatment; the presence of a medical

20  condition that significantly affects an individual's daily

21  activities; or the existence of chronic and substantial pain.'"

22  Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc)

23  (citing McGuckin, 974 F.2d at 1059-60).

24      The prisoner must allege the defendant purposefully ignored or

25  failed to respond to his pain or medical needs because an

26  inadvertent failure to provide adequate care does not constitute a

27  violation.  Estelle, 429 U.S. at 105-06; see also Wood v.

28  Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (noting that

although plaintiff's treatment was not "as prompt or efficient as a free citizen might hope to receive," it was not constitutionally deficient).  The official must have acted with deliberate indifference to an indication that the prisoner faced a substantial risk of serious harm.  <u>Farmer</u>, 511 U.S. at 847.

Pough alleges that he suffered from a narrowing at the C4-C5 level "due to a large uncovertebral joint spur." (Third Am. Compl. 34.)  In addition, he exhibited "moderately severe right unlar neuropathy." (<u>Id.</u> at 35.)

Plaintiff also claims he filed a request for emergency treatment after a damaged crown exposed a "sensitive tooth." (<u>Id.</u> at 36.)  Pough submitted grievances complaining that he had tooth decay and "sever[e]" pain due to the crown on one of his molars. (<u>Id.</u> Attach. #1 Ex. EE at 1.)  His later grievances requested pain reliever and an examination by an off-site dental specialist. (<u>Id.</u> at 1-2.)  These allegations are sufficient to establish that Pough had a serious medical need, as a reasonable patient would find his shoulder, spine, and dental conditions "significantly affect[] an individual's daily activities."  <u>See</u> <u>Lopez</u>, 203 F.3d at 1131 (quoting <u>McGuckin</u>, 974 F.2d at 1059-60).

To satisfy the second element, Pough must allege Defendant Almager knew Pough faced a substantial risk of serious harm.  <u>See</u> <u>Farmer</u>, 511 U.S. at 836.  Plaintiff alleges that his request for physical therapy to address the needling sensation in his fingers was never answered. (Third Am. Compl. 33.)  He also claims that after requesting emergency treatment, he was advised to have the tooth extracted because replacement of the cap was not part of prison dental services. (<u>Id.</u> at 37.)  Pough states he was

1   subsequently moved to another yard where a dentist cemented the

2   crown to his tooth without cleaning or preparing the crown or tooth

3   first.  (Id.)  Plaintiff alleges that "[a]s a proximate result of

4   [Almager's] policies, practices, customs, procedures, acts, and

5   omissions," Pough suffered immediate and irreparable injury.  (Id.

6   at 38.)

7        Almager moves to dismiss because Pough fails to state a claim

8   based on specific factual allegations but rather relies on

9   supervisory liability.  (Defs.' Mot. Dismiss & Sever Attach. #1

10  Mem. P. & A. 15.)  Also, Almager argues the Third Amended Complaint

11  has not placed him on notice of how he is responsible.  (Id.)  The

12  Court, however, must construe the pleadings liberally and construe

13  all facts in the light most favorable to Plaintiff.  See

14  Karim-Panahi, 839 F.2d at 623 (citation omitted); Cholla Ready Mix,

15  382 F.3d at 973 (citing Karam, 352 F.3d at 1192).

16       As discussed above, § 1983 of the Civil Rights Act does not

17  authorize an inmate to bring a cause of action based on respondeat

18  superior liability.  Monell, 436 U.S. at 692; see also Motley, 432

19  F.3d at 1081.  Pough has not sufficiently alleged liability against

20  Almager.  He does not allege facts showing how the Warden was

21  involved with the denial of his dental care or shoulder and spine

22  treatment.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

23  1988) (citing Estelle, 429 U.S. at 107; Wood, 852 F.2d at 1212)).

24  Pough does not allege Almager played an affirmative part in his

25  access to medical and dental care.  See King, 814 F.2d at 568

26  (citing Rizzo, 423 U.S. at 377).  Nor does he argue Almager knew

27  Plaintiff faced a substantial risk of serious harm when he was

28  denied physical therapy, a multivitamin, and teeth cleaning or when

his crown was affixed without proper preparation.  (<u>See</u> Third Am.
Compl. 37); <u>Farmer</u>, 511 U.S. at 836.  Without more than a
conclusory statement that Pough's medical and dental care was "a
proximate result of the Defendant[s] policies, practices, customs,
procedures, acts, and omissions," the Third Amended Complaint does
not state a claim against Almager based on deliberate indifference
to a substantial risk of harm.  (<u>See</u> Third Am. Compl. 38); <u>Monell</u>,
436 U.S. at 691.

It is not clear that Plaintiff's claim cannot be saved by the
allegation of additional facts.  <u>See</u> <u>Lopez</u>, 203 F.3d at 1127.
Therefore, the Court recommends that Plaintiff's deliberate
indifference to dental care needs claim against Warden Almager be
**DISMISSED WITHOUT PREJUDICE**, except to the extent Pough is alleging
a deliberate indifference claim based upon his teeth cleaning, this
claim should be **DISMISSED WITH PREJUDICE**.  Because Plaintiff has
failed to allege a claim based upon his shoulder and spine ailment,
this claim should also be dismissed.  Furthermore, it appears that
Pough will not be able to exhaust this claim, so it should be
**DISMISSED WITH PREJUDICE.**

C.   **Federal Rule of Civil Procedure 8 Violation**

Defendants move to dismiss Pough's Third Amended Complaint
under Federal Rule of Civil Procedure Rule 41(b) because it
violates Federal Rule of Civil Procedure 8(a).  (Defs.' Mot.
Dismiss & Sever Attach. #1 Mem. P. & A. 3-4.)  They complain that
Pough's forty-seven page Third Amended Complaint and seventy pages
of exhibits contain too much irrelevant information and too little
information about the facts that support the claims for relief.
(<u>Id.</u>)  Defendants also point out that local rule 8.2 states that

1    "[a]dditional pages not to exceed fifteen (15) in number may be
2    included with the court approved form complaint, provided the form
3    is completely filled in to the extent applicable in the particular
4    case."  (Id. at 4); see S.D. Cal. Civ. L.R. 8.2.  Plaintiff
5    responds that his pleadings comply with Federal Rule of Civil
6    Procedure 8, and the Court must give him the benefit of any doubt
7    because he is a pro se plaintiff.  (Pl.'s Opp'n 5-6 (citations
8    omitted).)

9        Under Rule 8(a) of the Federal Rules of Civil Procedure, a
10   complaint must contain a "short and plain statement of the claim
11   showing that the pleader is entitled to relief . . . ."  Fed. R.
12   Civ. P. 8(a).  "The plaintiff must allege with at least some degree
13   of particularity overt acts which defendants engaged in that
14   support the plaintiff's claim."  Jones, 733 F.2d at 649 (internal
15   quotation omitted).

16       As discussed above, for those claims Pough has properly
17   exhausted, he has not stated a claim.  The Court has recommended
18   that Defendants' Motion to Dismiss be granted for each of the
19   exhausted claims, some with leave to amend and some without.  Thus,
20   a Fourth Amended Complaint will be filed, so the Court need not
21   decide whether the Third Amended Complaint violates Rule 8 of the
22   Federal Rules of Civil Procedure.  Defendants' Motion to Dismiss
23   Plaintiff's Third Amended Complaint for failure to comply with Rule
24   8 should be **DENIED** as moot.  Even so, Pough is admonished that his
25   Fourth Amended Complaint should comply with the federal rules and
26   this Court's local rules.  The deficiencies pointed out by
27   Defendants should be corrected.

28

**D.    Immunity**

**1.    Eleventh Amendment Immunity**

The Defendants argue that they cannot be sued for damages "in their official capacity" in federal court; for that reason, Pough's claims for monetary damages against them in their official capacity should be dismissed.  (Defs.' Mot. Dismiss & Sever Attach. #1 Mem. P. & A. 5.)  The Eleventh Amendment grants the states immunity from private civil suits.  U.S. Const. amend. XI; Henry v. County of Shasta, 132 F.3d 512, 517 (9th Cir. 1997), as amended, 137 F.3d 1372 (9th Cir. 1998).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)).

Plaintiff makes claims against Defendants Ryan, Bradley, and Grannis in their individual and official capacities; he asserts claims against Arellano, Navarro, and Almager in their official capacities; but against all he seeks prospective injunctive and monetary relief.  (Third Am. Compl. 2-3, 40-47.)  Plaintiff's claim for monetary damages is properly alleged against Defendants in their individual capacities.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985).  But the claims against Defendants in their official capacities are claims against the State of California, which is absolutely immune from liability for damages.  See Brandon, 469 U.S. at 471.

Accordingly, Defendants are entitled to sovereign immunity, and their Motion to Dismiss monetary claims against them in their official capacities should be **GRANTED WITHOUT LEAVE TO AMEND**.

**2.   Qualified Immunity**

Defendants argue that they are each entitled to qualified immunity because Plaintiff fails to allege that any Defendant "caused a constitutional violation which was clearly established in the circumstances in which they are alleged to have acted." (Defs.' Mot. Dismiss & Sever Attach. #1 Mem. P. & A. 23.)  Indeed, the Court should attempt to resolve this threshold immunity question at the earliest possible stage of litigation.  See <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991) (citations omitted); <u>Crawford-El v. Britton</u>, 523 U.S. 574, 598 (1998) (noting that the purpose of resolving immunity issues early is so that officials are not subjected to unnecessary discovery).

As noted above, the Court has recommended that each of Plaintiff's claims be dismissed.  The qualified immunity issue therefore remains premature until, and if, Pough amends his complaint.  See <u>Taylor v. Vt. Dep't of Educ.</u>, 313 F.3d 768, 793-94 (2nd Cir. 2002) (explaining that ruling on qualified immunity in the context of a Rule 12(b)(6) motion would be premature because the issue "turns on factual questions that cannot be resolved at this stage of the proceedings[]"); see also <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (stating government officials are shielded from liability if their conduct does not violate a constitutional right that was clearly established) (citations omitted). Defendants' Motion to Dismiss based on qualified immunity should be **DENIED WITHOUT PREJUDICE** as premature.

**E.   Severance**

Defendants argue that Pough's Third Amended Complaint violates Rules 18 and 20 of the Federal Rules of Civil Procedure

1  because it contains unrelated claims against unrelated Defendants

2  "who are not alleged to share in any common question of fact or law

3  . . . ." (Defs.' Mot. Dismiss & Sever Attach. #1 Mem. P. & A. 2-

4  3.) They move to sever from this lawsuit all exhausted claims,

5  other than the dominant access to court claim. (Id. at 19-20.)

6  Also, they seek to sever all Defendants who are not properly named

7  in connection with the access to court claim. (Id. at 20-21.)

8      As previously discussed, the Court has recommended that

9  Plaintiff's claims be dismissed, some with and some without

10  prejudice. Defendants' Motion to Sever parties and claims is

11  therefore premature. A more appropriate time to consider what

12  claims and which parties should proceed separately would be at the

13  conclusion of discovery or after a ruling on any summary judgment

14  motions. See Benitez v. American Standard Circuits, Inc., No. 08-

15  CV-1998, 2009 U.S. Dist. LEXIS 22113, at *17 (N.D. Ill. Mar. 18,

16  2009) (conclusion of discovery); Combs v. Grand Victoria Casino &

17  Resort, No. 08-CV-0414-RLY-JMS, 2008 U.S. Dist. LEXIS 75726, at *10

18  (S.D. Ind. Sept. 30, 2008) (after summary judgment). Defendants'

19  Motion for Severance of Parties and Claims should be **DENIED WITHOUT**

20  **PREJUDICE** as premature.

21                          **IV. CONCLUSION**

22      For the reasons stated above, Defendants' Motion to Dismiss

23  should be **GRANTED** in part and **DENIED** in part.

24      Plaintiff's claims regarding equal protection, disinfectant

25  distribution, an unsanitary kitchen, the presence of mice and

26  insects, pesticide exposure, and medical care for his shoulder

27  condition or psychological problems should be **DISMISSED WITH**

28  **PREJUDICE** for failure to exhaust administrative remedies.

1    Defendants' Motion to Dismiss count one against Defendant
2  Almager for violating Plaintiff's right to access the courts and
3  equal protection should be **GRANTED**.  Because Pough appears unable
4  to exhaust the claims, the count should be **DISMISSED WITH**
5  **PREJUDICE**.  Likewise, count one against Defendants Ryan, Bradley,
6  and Grannis, alleging they violated Plaintiff's right to access the
7  courts and equal protection should be **DISMISSED WITH PREJUDICE**.
8  Count two against Defendants Navarro, Arellano, and Almager, which
9  alleges cruel and unusual punishment due to the denial of hot meals
10  and inadequate use of hairnets should be **DISMISSED WITH PREJUDICE**
11  **AND WITHOUT LEAVE TO AMEND**.  Count three alleges deliberate
12  indifference to Plaintiff's serious medical and dental needs; the
13  count should be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO**
14  **AMEND**, except the claims relating to teeth cleaning, shoulder
15  treatments, and Pough's spine ailments should be **DISMISSED WITH**
16  **PREJUDICE**.
17    Defendants' Motion to Dismiss Plaintiff's Third Amended
18  Complaint for failure to comply with Rule 8 of the Federal Rules of
19  Civil Procedure should be **DENIED** as moot.  Defendants' Motion to
20  Dismiss monetary claims against them in their official capacities
21  should be **GRANTED**.  Defendants' Motion to Dismiss based on
22  qualified immunity and for severance should be **DENIED WITHOUT**
23  **PREJUDICE** as premature.
24    This Report and Recommendation will be submitted to the United
25  States District Court judge assigned to this case, pursuant to the
26  provisions of 28 U.S.C. § 636(b)(1).  Any party may file written
27  objections with the Court and serve a copy on all parties on or
28  before January 29, 2010.  The document should be captioned

1    "Objections to Report and Recommendation."   Any reply to the

2    objections shall be served and filed on or before February 15,

3    2010.   The parties are advised that failure to file objections

4    within the specified time may waive the right to appeal the

5    district court's order.   <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.

6    1991).

7         **IT IS SO ORDERED.**

8

9    DATE:   January 6, 2010

           RUBEN B. BROOKS
10          United States Magistrate Judge

11   cc:  Judge Miller
          All Parties of Record

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28